THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
OTILIO CASIANO, Defendant-Appellant.

First District (4th Division)   No. 1—88—1309

Opinion filed February 7, 1991.—Modified on denial of
rehearing May 9, 1991.

Michael J. Pelletier and Karen Daniel, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Joseph Brent, and Mary Kenney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Defendant, Otilio Casiano, was convicted of one count of kidnapping (Ill. Rev. Stat. 1985, ch. 38, par. 10—1(a)(2)), and three counts of aggravated criminal sexual assault, based on the kidnapping (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(4)), following a bench trial in the circuit court of Cook County. Defendant was sentenced to the penitentiary for three concurrent terms of 16 years.

Defendant appeals, contending the State failed to prove him guilty beyond a reasonable doubt of both offenses. Focusing on the kidnapping conviction, defendant also argues that the evidence failed to establish that he "carried" the victim and, alternatively, that any asportation that did occur was merely incidental to the principal offense of criminal sexual assault. Defendant lastly assigns error to his sentence.

We affirm defendant's convictions and sentence.

BACKGROUND

The record contains the following pertinent facts. Defendant was charged in a 15-count indictment with various offenses relating to criminal sexual assault and kidnapping. He was tried on all counts.

At trial, the victim testified as follows. On January 12, 1987, at between 1 and 2 a.m., the victim was waiting for a bus on Division Street in Chicago after visiting a friend. After waiting for a bus for at least one-half hour, the victim began to walk west on Division Street. After she walked 8 to 10 blocks, defendant approached her from behind, stuck a sharp object in her back, grabbed her arm, and forced her to walk with him to his apartment, a distance of approximately 1½ blocks.

Once inside the apartment, defendant began to push the victim, ordered her to remove her clothes, and threatened to kill her if she did not do so. Defendant displayed a butterknife and repeated his demand. The victim began to cry and asked defendant if she could telephone her mother to obtain a ride home. Defendant allowed the victim to use his telephone. However, instead of calling her mother, the victim telephoned the 911 emergency line. When the 911 operator answered the call, the victim said, "Mama, will you please come and get me?" Defendant then grabbed the telephone from the victim and hung up.

A short time later, defendant again demanded that the victim remove her clothes. Defendant snatched at the victim's sweatshirt and tore it. The victim removed her sweatshirt. Defendant granted the victim's second request to telephone her mother. For the second time, the victim dialed the 911 emergency line. When the 911 operator asked her what was wrong, the victim stated, "I can't tell you, I can't tell you." Defendant again hung up the telephone.

The victim pleaded with defendant not to hurt her. In response, defendant threatened to beat and kill the victim and throw her out of the window or back door. Defendant then undressed the victim at knifepoint and raped and sodomized her.

During this prolonged attack, the police arrived. Police officers rang the doorbell and flashed a spotlight on the window, but defendant prevented the victim from approaching the window. The police departed from the scene when they received no response.

A short time later, the victim again obtained defendant's permission to telephone her mother. The victim redialed the 911 emergency number and pretended to speak to her mother. Defendant hung up the telephone and again sodomized her. The police again returned to defendant's apartment building, interrupting the attack. They rang the doorbell, pounded on and kicked the door, shone a spotlight on the window, and sounded their horn and siren. Defendant again restrained the victim. After receiving no response, the police left the scene.

After the police departed, defendant ordered the victim to dress and leave his apartment. The victim complied, hailed a police squad car in the vicinity of the building, and informed the officers that she had been sexually assaulted. Accompanied by the police, the victim returned to defendant's apartment and identified him as the offender.

On cross-examination, the victim additionally testified as follows. Earlier that evening she drank three cans of beer. At defendant's apartment, the victim used cocaine; however, she did so at defendant's command and not voluntarily. She first saw the butterknife only when defendant removed her clothes. Also, the victim did not tell the police officers to whom she first spoke that defendant threatened her with a knife and threatened to throw her out of the window. The victim could not remember whether she subsequently gave this information to police detectives.

Chicago police officer Patrick Gillespie testified that he twice responded to reports of disturbances at defendant's apartment building. However, he did not receive any response each time he announced his presence. Chicago police officers Elijah Ortiz and Linda Gonzales testified that the victim hailed their squad car approximately one block from defendant's apartment. Officer Ortiz observed that the victim wore a torn sweatshirt. He also identified in court the knife that he recovered from the apartment. Officer Gonzales testified that the victim identified defendant as her assailant.

The parties then stipulated to the testimony of Rajeev Sareen, M.D., and Christine Anderson. Dr. Sareen, an emergency room physician, would testify as follows. He performed a physical examination of the victim subsequent to the attack. His examination disclosed superficial scratch marks on the right side of the neck and a swollen lower lip. Additionally, he prepared a Vitullo kit, a medical test used in sex-

ual assault investigations. Christine Anderson, a police department criminologist, would testify that a vaginal swab taken from the victim revealed the presence of semen and type A activity. Defendant's blood and saliva samples indicated that he is a type A secretor. The victim's blood and saliva samples indicated that she is a type O nonsecretor. The State rested.

Defendant's case consisted of a stipulation. Defendant and the State stipulated that if called to testify, a police detective would testify that the victim did not tell him that defendant threatened her with a knife in the apartment or threatened to throw her out of his window.

The trial court found that defendant used force to carry the victim from one place to another, i.e., from the street to his apartment, with the intent to confine her secretly against her will. Thus, the court convicted defendant of one count of kidnapping. (Ill. Rev. Stat. 1985, ch. 38, par. 10—1(a)(2).) The court also found that defendant committed criminal sexual assault based on the forced sexual intercourse, and oral and anal sodomy. Further, the criminal sexual assault was aggravated by the kidnapping. Accordingly, the court convicted defendant of three counts of aggravated criminal sexual assault. Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(4).

At the sentencing hearing, the trial court denied defendant's post-trial motion. At the close of the hearing, the court sentenced defendant to three concurrent prison terms of 16 years for the three convictions of aggravated criminal sexual assault. The court stated:

> "And I do, in fact, sentence you to [prison] for a term of 16 years on each of the charges, each of the three charges. Your terms will run concurrent; meaning, you'll be serving all the three sentences at the same time."

Defendant appeals.

OPINION

I

■ We first address defendant's claims relating to his kidnapping conviction. He was indicted for violating the Criminal Code of 1961, section 10—1(a)(2), which provides as follows:

> "§10—1. Kidnaping. (a) Kidnaping occurs when a person knowingly:
>
> * * *
>
> (2) By force or threat of imminent force carries another

from one place to another with intent secretly to confine him against his will.

\* \* \*

(c) Sentence.

Kidnaping is a Class 2 felony." (Ill. Rev. Stat. 1985, ch. 38, par. 10—1.)

Additionally, it is elementary that the State must prove beyond a reasonable doubt every element of the crime charged. *People v. Wolter* (1979), 78 Ill. App. 3d 32, 38, 396 N.E.2d 1102, 1106.

A

Defendant argues that the evidence failed to prove that he actually "carried" the victim from the street to his apartment. Thus, he argues, the kidnapping conviction should be reversed, the conviction for aggravated criminal sexual assault should be reduced to criminal sexual assault, and the cause remanded to the trial court for resentencing.

■ At common law, the offense of kidnapping had a narrow scope. It was the forcible abduction of a person and sending that person into another country. Kidnapping was merely an aggravated form of false imprisonment. Thus, kidnapping was a relatively unknown and inconsequential offense. (Model Penal Code §212.1, Comment, at 210 (1980); 2 C. Torcia, Wharton's Criminal Law §210 (14th ed. 1979); 2 W. Burdick, Law of Crime §383 (1946).) Today, however, kidnapping is punished by statute and all States have progressively extended the scope of the offense. It is a crime of far broader definition and carries major felony sanctions. Model Penal Code §212.1, Comment, at 210 (1980); 2 W. Burdick, Law of Crime §387 (1946).

■ ■ Simple kidnapping is sometimes defined, as in Illinois, as a seizure with asportation or detention. (Note, *A Rationale of the Law of Kidnapping*, 53 Colum. L. Rev. 540, 541 (1953).) "Asportation" has long been defined as either a "carrying," "carrying away," or "removal" of goods "from one place to another." (Black's Law Dictionary 105 (5th ed. 1979); 1 Bouvier's Law Dictionary 253 (3d rev. 1914).) Of course, the concept of asportation applies also to persons. (See Annot., 43 A.L.R.3d 699 (1972).) Kidnapping statutes that contain asportation provisions typically use terms such as "carries," "carries away," "takes away," or "removes." (53 Colum. L. Rev. at 545.) Criminal Code section 10—1(a)(2) provides that kidnapping occurs when a defendant "carries another from one place to another." Ill. Rev. Stat. 1985, ch. 38, par. 10—1(a)(2).

■ Defendant argues that " 'carrying,' not 'asportation,' is an essential element of the offense of kidnapping." He further argues that "there was no evidence that [the victim] was 'carried,' either by motor vehicle, by [defendant] or by any other means."

This argument completely lacks merit. Defendant attempts to distinguish the word "carry" from the legal concept of asportation. However, as shown above, an asportation *is* a "carrying." Also, the word "carry" itself not only means to move while supporting a load, but also to "escort, lead, guide," "convey," or "take." (Webster's Third New International Dictionary 343 (1986).) We hold that the word "carries" in Criminal Code section 10—1(a)(2) simply refers to the general legal concept of asportation.

■ We further conclude that an asportation occurred in the case at bar. Defendant forced the victim, at knifepoint, to walk with him approximately 1½ blocks to his apartment. Thus, the victim was carried "from one place to another." We hold that the State proved beyond a reasonable doubt that an asportation occurred as provided by Criminal Code section 10—1(a)(2).

### B

■ Defendant alternatively argues that even if an asportation occurred, such movement was merely incidental to the "principal" offense of criminal sexual assault. It is true that not every asportation rises to the level of a kidnapping. (*People v. Thomas* (1987), 163 Ill. App. 3d 670, 676, 516 N.E.2d 901, 905.) Illinois courts consider four factors in determining when an asportation or a detention rises to the level of kidnapping as a separate offense. They are: (1) the duration of the asportation or detention, (2) whether the asportation or detention occurred during the commission of a separate offense, (3) whether the asportation or detention that occurred is inherent in the separate offense, and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense. *People v. Smith* (1980), 91 Ill. App. 3d 523, 529, 414 N.E.2d 1117, 1122.

■ Applying these factors to the case at bar, it is clear that defendant violated Criminal Code section 10—1(a)(2) as a separate offense. First, the asportation lasted approximately 1½ blocks. Whether an asportation is sufficient to constitute a kidnapping depends on the particular facts and circumstances of each case. Thus, the "time involved in the movement or the distance it covers are not the determining factors" in whether the separate offense of kidnapping occurred. (*State v. Jackson* (Mo. App. 1985), 703 S.W.2d 30, 33.) In the

present case, although the asportation involved only a short distance, the victim was moved to a location that made the assault easier to commit and which reduced the danger of detection. Accord *State v. Jackson* (Mo. App. 1985), 703 S.W.2d 30 (victim forced at knifepoint to walk approximately one block from parking lot to vacant house); *Beck v. United States* (D.C. App. 1979), 402 A.2d 418 (victim forced at knifepoint to walk approximately 15 feet from street to defendant's house).

Second, the asportation occurred prior to, rather than during, the sexual assault. Third, the act of forcing the victim to walk approximately 1½ blocks certainly is not inherent in the offense of criminal sexual assault. (See Ill. Rev. Stat. 1985, ch. 38, par. 12—13.) Fourth, the asportation clearly created a significant danger to the victim independent of that posed by the sexual assault. Defendant grabbed the victim's arm from behind, stuck a sharp object in her back, and forced her to walk approximately 1½ blocks in this manner. A significant danger arose from this movement itself, and also from the potential of more serious criminal activity due to the privacy of defendant's apartment. We hold that the kidnapping under Criminal Code section 10—1(a)(2) was a separate offense and not merely incidental to the criminal sexual assault. See *People v. Gully* (1986), 151 Ill. App. 3d 795, 800, 502 N.E.2d 1091, 1095.

## II

■ Defendant also claims that the evidence failed to prove beyond a reasonable doubt his guilt. On appeal, a reviewing court, considering all of the evidence in the light most favorable to the prosecution, must determine whether any rational fact finder could have found beyond a reasonable doubt the essential elements of the crime. A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276-77.

## A

■■ ■ Addressing his kidnapping conviction, defendant essentially attacks the credibility of the victim's testimony and attempts to draw therefrom unfavorable inferences. However, it is well settled that "[i]n a bench trial it is for the trial judge to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence." (*People v. Slim* (1989), 127 Ill. 2d 302, 307, 537 N.E.2d 317, 319; *People v.*

*Berland* (1978), 74 Ill. 2d 286, 305-06, 385 N.E.2d 649, 658.) This is exactly what the trial judge did in the instant case. After reviewing the evidence in the light most favorable to the prosecution, we conclude that the evidence established beyond a reasonable doubt a violation of Criminal Code section 10—1(a)(2). (Ill. Rev. Stat. 1985, ch. 38, par. 10—1(a)(2).) Further, we cannot say that the evidence is so improbable or unsatisfactory as to create a reasonable doubt of defendant's guilt.

B

Defendant likewise claims that the victim's testimony on the sexual assault was "contrary to human experience." Defendant essentially notes inconsistencies in the victim's testimony, brought out during both direct and cross-examination.

■■■ ■ To sustain a conviction of criminal sexual assault, there must be evidence that a defendant committed an act of sexual penetration, *i.e.*, "any contact, however slight, between the sex organ of one person and the sex organ, mouth or anus of another person," by the use or threat of force or violence. (Ill. Rev. Stat. 1985, ch. 38, pars. 12—12(d), (f), 12—13(a)(1).) Further, this court agrees with the Appellate Court for the Fourth District that there exists only one standard of review in determining the sufficiency of the State's evidence in a criminal case. Thus, we no longer require that, in a sex offense case, the State must demonstrate that either the victim's testimony is clear and convincing, or substantially corroborated, to prove guilt beyond a reasonable doubt. *People v. Byrd* (1990), 206 Ill. App. 3d 996, 1008, 565 N.E.2d 176, 182, relying on *People v. James* (1990), 200 Ill. App. 3d 380, 384, 558 N.E.2d 732, 741-42; *People v. Westfield* (1990), 207 Ill. App. 3d 772, 777, 566 N.E.2d 392, 395-96, relying on *People v. Roy* (1990), 201 Ill. App. 3d 166, 185, 58 N.E.2d 1208, 1221.

■■ After closely reviewing the entire record, we conclude that the evidence was sufficient for a rational trier of fact to find defendant guilty beyond a reasonable doubt. The victim testified that defendant was armed with a knife; Officer Ortiz identified the knife, which he found in defendant's apartment. The victim testified that defendant tore her sweatshirt in an attempt to remove it; Officer Ortiz observed that the victim wore a torn sweatshirt when they met. Also, the victim testified that she thrice telephoned the 911 emergency line to summon aid; that the police came to defendant's apartment building twice; and that during each visit defendant hid her from the police. Officer Gillespie testified that he twice responded to reports of disturbances at defendant's apartment building, but received no re-

sponse each time he announced his presence. We note that the victim's testimony was substantially corroborated and, thus, satisfies the former dual standard of review in sex offense cases. (See *People v. Bolton* (1990), 207 Ill. App. 3d 681, 685, 566 N.E.2d 348, 350.) We cannot say that this evidence is so improbable or unsatisfactory as to create a reasonable doubt of defendant's guilt.

## III

Defendant lastly assigns error to the sentencing order entered by the trial court. The State concedes that the order contains two errors. First, the order erroneously indicates that defendant was convicted of criminal sexual assault. The report of proceedings shows that defendant was convicted of one count of kidnapping and three counts of aggravated criminal sexual assault, based on the sexual intercourse and oral and anal sodomy, and aggravated by the kidnapping. Second, the order erroneously indicates that defendant was sentenced to a separate 16-year concurrent prison term for the kidnapping conviction. The report of proceedings shows that defendant was sentenced only to three concurrent, 16-year terms for the three aggravated criminal sexual assault convictions.

In cases where the report of proceedings conflicts with the common-law record, the report of proceedings will prevail. (*People v. Thompson* (1977), 51 Ill. App. 3d 447, 450, 366 N.E.2d 1009, 1011, relied on in *People v. Ammons* (1983), 120 Ill. App. 3d 855, 863, 458 N.E.2d 1031, 1037.) Accordingly, we correct the sentencing order here, so that it reflects that defendant was convicted of one count of kidnapping (Ill. Rev. Stat. 1985, ch. 38, par. 10—1(a)(2)) and three counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(4)). The sentencing order will also reflect that defendant was sentenced to three concurrent prison terms of 16 years for the three aggravated criminal sexual assault convictions. 107 Ill. 2d R. 615(b); see *Thompson*, 51 Ill. App. 3d at 450-51, 366 N.E.2d at 1011-12.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed, and the common-law record is corrected as stated in this opinion.

Affirmed and record corrected.

JIGANTI, P.J., and McMORROW, J., concur.