THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TIMOTHY BROWN, Defendant-Appellant.

First District (1st Division)   No. 1—92—1612

Opinion filed February 22, 1994.

Rita A. Fry, Public Defender, of Chicago (Hugh Stevens, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and Robyn Berman, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant Timothy Brown was convicted on charges of aggravated criminal sexual assault, aggravated criminal sexual abuse and two counts of armed robbery. Defendant was sentenced to 45 years in the Illinois Department of Corrections. Defendant now appeals his convictions and sentences.

The record on appeal indicates the following facts. On August 23, 1991, L.A. was a 28-year-old woman who worked as a bartender for a hotel. L.A.'s fiance, Thaddeus Bowden, was on leave from the army, but was to leave Illinois for Texas the next day. Bowden picked up L.A. from work at approximately 2:30 a.m. After getting some food, L.A. and Bowden sat in Bowden's car outside L.A.'s home, which she shared with her mother. The two talked while Bowden ate; it was approximately 4 a.m.

L.A. testified that she and Bowden noticed approximately five men making noise on the porch of the home of the Langford family, which was a couple of houses away on the same side of the street as L.A.'s house. L.A. testified that she knew the Langford sons and had seen them for approximately $7^1/_2$ years. L.A. indicated that on the

porch were Deandre Langford, Derrick Langford, a boy named Mack and two boys that she did not know by name. L.A. identified one of these boys as defendant. L.A. indicated that she had seen defendant with Deandre or Derrick a few times before August 23, 1991.

L.A. and Bowden drove to McDonald's for coffee, but then parked again outside L.A.'s house. However, their car was now facing away from the Langford house. L.A. testified that people were still on the porch when she and Bowden returned.

L.A. rolled down her car window to smoke a cigarette. A man then appeared outside the window, holding a shotgun inches from the right side of L.A.'s face. L.A. looked back and saw no one on the Langford porch. L.A. testified that the man holding the shotgun wore a blue cap, brown pants, navy blue windbreaker, beige shirt and white gym shoes with blue stripes. The man also wore a white handkerchief across the lower half of his face. The man told L.A. to "give it up." L.A. replied that she did not have anything and told the man to take her purse; L.A. bent down to get the purse. The man told L.A. to get out of the car.

L.A. testified that after she exited the car, the man put his hands under her shirt and brassiere and fondled her breasts. L.A. was face to face with this man under the streetlight; she was staring at him because she felt like a dog. The man told her to pull down her clothes; L.A. indicated that either she or he pulled her pants down to her ankles. L.A. testified that the man placed his fingers in her vagina and felt all over her. The man continued to hold the shotgun during this period of time. L.A. was looking at the man during this time; she particularly noticed his "pretty brown eyes."

The man told L.A. to get on her knees. L.A. indicated that as she got down on her knees, the man entered the car and searched the glove compartment. L.A. got up and pulled up her pants. L.A. observed that the man was about 5 feet 5 inches tall and weighed approximately 145 or 150 pounds. The man then grabbed her arm, held the shotgun to her stomach and said "you're going with me." At this point, L.A. noticed a second man with Bowden on the other side of the car. The first man began to drag L.A. toward an alley next to her house. L.A. grabbed the shotgun; the first man told her that he was going to "pop" her. L.A. testified that she did not know whether the man was going to shoot her or rape her.

According to L.A., the second man then said "Come on. Let's go. Let's go." L.A. recognized the second man as Mack by his voice and the Jheri curls coming out from under his cap. L.A. testified that Mack was wearing a royal blue jacket. She also recognized the man who was attempting to drag her into the alley as defendant. L.A.

testified that after Mack spoke, he and defendant ran up an alley running north from L.A.'s house.

L.A. and Bowden tried to follow defendant and Mack, but lost them. She and Bowden then located a police officer and told him that they had been robbed. The police officer followed L.A. and Bowden to L.A.'s house and filled out a report. L.A. and Bowden gave the police officer descriptions of defendant and Mack. The police officer told them to call the police if they saw defendant or Mack again.

L.A. then banged on the door of her house to wake her mother. L.A. told her mother that she had been robbed, that she knew who had robbed her and whispered what defendant had done to her. L.A. testified that she had not told her fiance where defendant had put his hands because she was too embarrassed and ashamed. According to L.A., Bowden was facing away from her during the robbery because of Mack.

Later, L.A. and her mother went out on their front porch. L.A. testified that she saw Deandre, Derrick and another man walk out onto the Langford porch. L.A. went down to the Langford house. L.A. saw that Deandre had an unopened pack of Newport cigarettes that she believed belonged to her. L.A. obtained a couple of cigarettes from Deandre and confronted him about the incident.

After L.A. returned to her own porch, she saw defendant come out onto the Langford porch. L.A. testified that he was wearing the same clothes as during the robbery, except that he was not wearing the handkerchief across his face. L.A. went back to the Langford porch and stared into his eyes for approximately a minute. L.A. testified that she recognized those eyes. Defendant dropped his head and looked down.

L.A. testified that she went back to her porch and that Mack came out onto the Langford porch approximately 10 minutes later. L.A. indicated that Mack was wearing the same clothes he wore during the robbery, except that he was not wearing his cap or his Jheri curls. L.A. said, "There's the other dog" and pointed at Mack. According to L.A., Mack saw her and everyone quickly left the Langford porch. L.A. called the police, but there was no response.

L.A., her mother, her brother and Bowden then drove around the neighborhood for approximately 45 minutes, looking for L.A.'s purse. L.A. testified that the purse contained, among other things, a videotape, her phone book and $245. The search was unsuccessful.

The next day, L.A. sat in a car outside her house with a cordless telephone, watching the Langford house. L.A. testified that she called the police when she saw Derrick at approximately noon. The police arrived and drove around the block, but did not find Derrick. The po-

lice told her to call them if she saw him again. L.A. continued to watch the Langford house and saw people enter the building. L.A. testified that a man from across the street, whose name she did not recall, came over to her car at approximately 4 p.m. and said, "Why are you sitting out here? These young boys, they're not playing. They have guns. The best thing you could do is just call the police. Don't sit out here." The trial court overruled defense objections to this last piece of testimony, but instructed the jury in advance on the hearsay rule, indicating that the testimony was not being admitted for the truth of the man's statement, but to show why L.A. did what she did.

L.A. testified that she then called the police, believing that defendant or Mack was inside the Langford house. Two police officers arrived. The police entered the house and exited with Deandre. The police left with Deandre in their squad car. L.A. testified that she went back into her house, but that the police returned minutes later and asked her to step outside. The police had Deandre and defendant with them and asked L.A. to identify which person had held a gun to her head. L.A. identified defendant. The police then released Deandre; L.A. accompanied the officers to the police station.

L.A. testified that she received a telephone call at approximately 12:45 a.m., after returning from the police station. L.A. stated that the caller identified himself as Derrick. The trial court then had counsel approach the bench; a discussion was held off the record. The trial court then reinstructed the jury about the hearsay rule. L.A. testified that Derrick said that he had the purse and the videotape and that she was wrong to have his brother and a friend locked up. L.A. testified that she received another call from Derrick the following day, during which he asked "How do you think that Timothy's mother is going to feel about her son being in jail?" L.A. responded that she was not trying to hurt defendant, but that she was hurt. L.A. testified that she then heard someone identifying herself as defendant's mother yelling into the telephone. Defense counsel asked that the whole testimony be stricken; the trial court instructed the jury that the testimony was hearsay; while the woman identified herself as defendant's mother, the jury could not know whether the speaker was in fact defendant's mother.

L.A. testified that approximately two days later, she was standing outside, when Derrick called to her from the Langford porch. L.A. stated that she went over to Derrick, who handed her a Jewel grocery bag containing her purse. L.A. testified that Derrick told her that his friend Clarence found it and did not want his fingerprints on it. L.A. indicated that the videotape, phone book and money were missing.

Bowden gave testimony that largely corroborated L.A.'s testi-

mony. L.A.'s mother also gave corroborating testimony, including the substance of the conversation she had with L.A. the evening of the robbery; a defense objection was overruled.

Chicago police officer Dana Alexander gave testimony regarding his investigation of this case. Officer Alexander testified that when he entered the Langford home, he told Mrs. Langford that Deandre was being detained to determine whether he was involved in the case and described the perpetrators to Mrs. Langford. Defendant objected to Officer Alexander's testimony that Mrs. Langford told him that one of the perpetrators was named Tim. The objection was sustained. However, when Officer Alexander testified that he went to a particular block of West Van Buren and asked a kid on the street where Tim lived, defendant's objection was overruled.

Following closing arguments and jury instruction, the jury found defendant guilty on all counts. At a separate hearing the trial court heard arguments in aggravation and mitigation of the sentence. The trial court sentenced defendant to 20 years on the armed robbery charges. The trial court imposed consecutive sentences of 20 and 5 years on the charges of aggravated criminal sexual assault and aggravated criminal sexual abuse. Defendant filed a motion for a new trial and a motion to reconsider the sentence; both were denied. Defendant now appeals.

I

Defendant initially contends that the trial court erred in admitting the substance of the conversation between L.A. and her mother. Defendant contends that the testimony of L.A.'s mother on this point should have been barred under the hearsay rule. Generally, a witness may not bolster her testimony by showing she made similar statements out of court; however, there is a well-established exception to this rule in sexual assault cases where the prosecuting witness made a prompt complaint of the incident. (*People v. Evans* (1988), 173 Ill. App. 3d 186, 199, 527 N.E.2d 448, 457.) In order to fall within the scope of this exception, the statement must have been made without any inconsistent or unexplained delay and must have been voluntary and spontaneous, rather than the product of a series of questions. (*Evans*, 173 Ill. App. 3d at 199, 527 N.E.2d at 457.) Moreover, only the fact of the complaint is admissible; neither the details of the complaint nor the identity of the named perpetrator is admissible. *Evans*, 173 Ill. App. 3d at 199-200, 527 N.E.2d at 457.

■ In this case, the record shows that L.A. made a complaint to her mother, but did not make a similar statement to Bowden, who

was present at the crime scene, or to the police officer she and Bowden found shortly after the crime occurred. However, the record also shows that L.A. testified that she did not mention the sexual aspects of the crime earlier because her fiance was present and she was too embarrassed and ashamed to tell him. Thus, it appears that the delay in making the complaint was explainable.

Moreover, the substance of the conversation did not contain any great detail of the incident. Indeed, the record shows that the only details admitted were that men with guns took her purse and Bowden's money, that she was fondled and penetrated by a finger and that a man tried to drag her into an alley. It would appear that these are minimal details that show only that crimes occurred. In some cases, it may be unreasonable to expect a lay person who has just been the victim of various crimes to phrase her complaint in legal terms that would obviate the need for *any* details. Furthermore, during the testimony of L.A.'s mother the trial court sustained the defense objection to the question of whether L.A. told her mother that she knew who committed the crimes. L.A. testified that she told her mother that she knew the offenders. However, defendant did not object to this testimony, resulting in waiver on appeal. In addition, such testimony did not in fact name the offenders. Thus, defendant has failed to show that the trial court abused its discretion in admitting the testimony in this instance.

We note in passing that many of the details which defendant complains of in his brief refer to the State's characterization of the conversation during closing argument. However, the record indicates that defendant made no objection to these comments at trial, thus waiving them on appeal.

In sum, the admission of the substance of the conversation between L.A. and her mother was not reversible error in this case.

II

Defendant's second argument is that the trial court erred in admitting the substance of conversations between L.A. and the man from across the street, between Officer Alexander and Mrs. Langford, and between Officer Alexander and a child in defendant's neighborhood.

As to the first conversation, the State maintains that the statements of the unidentified man to L.A. that she should call the police instead of sitting out in her car and that the boys had guns were admissible to show why L.A. then called the police. (See *People v. Jackson* (1986), 145 Ill. App. 3d 626, 636, 495 N.E.2d 1207, 1216.) Defendant claims that this justification is pretextual because L.A.

had testified that she saw traffic going in and out of the Langford house.

■ However, L.A.'s testimony appears to indicate that she was not sure whether persons connected to the crimes were present at the Langford home. Thus, the conversation was admissible pursuant to *Jackson*. Defendant could argue that while the fact of the conversation could be admitted on this basis, the substance remains inadmissible hearsay. Yet any error in this regard would be deemed cured in this case, as the trial court contemporaneously instructed the jury on the hearsay rule and indicated that the statements were being admitted only to show why L.A. acted as she did. Moreover, the jury instructions indicated that evidence admitted for a limited purpose was to be considered only for that limited purpose. Consequently, defendant has failed to show that a reversal of his conviction is warranted on this basis.

As to the conversation between Officer Alexander and Mrs. Langford and the conversation between Officer Alexander and the child in defendant's neighborhood, the record shows that defendant failed to make any objection to their admission in his post-trial motion. Thus, the arguments should be deemed waived on appeal.

### III

Defendant next claims that the trial court improperly admitted the substance of the two telephone conversations involving L.A. and persons identifying themselves as Derrick and defendant's mother.

■ As to the conversations with Derrick, it should be noted that the identity of a telephone caller is not hearsay where it can be established by direct or circumstantial evidence. (*People v. Gray* (1991), 209 Ill. App. 3d 407, 414, 568 N.E.2d 219, 223.) Moreover, any error in the admission of hearsay is considered harmless where the testimony is supported by corroborative evidence. (*Evans*, 173 Ill. App. 3d at 200, 527 N.E.2d at 457.) Here, L.A. testified that she had known Derrick for a number of years; indeed, she testified that she had spoken to Derrick previously.

As to the conversation with the person identifying herself as defendant's mother, the record shows that the trial court again instructed the jury that the identification was hearsay, thereby curing any error arising from admission of the identification. Defendant has also failed to point to anything in the record showing that the substance of this caller's comments was admitted. These facts distinguish this case from those relied upon by defendant. (See *People v. Davis* (1984), 130 Ill. App. 3d 41, 473 N.E.2d 387; *People v. Kneller* (1980), 83 Ill. App. 3d 325, 403 N.E.2d 1252.) Thus, defendant has

failed to show that the admission of the testimony regarding these telephone conversations warrants a reversal in this case.

## IV

Defendant next claims he was denied a fair trial due to allegedly improper comments of the State during opening and closing arguments.

Defendant claims that a number of the statements made by the prosecution were not based upon the facts adduced at trial. However, the statements identified in defendant's brief were not the subject of objections at trial and in defendant's post-trial motion. Thus, these objections are waived on appeal.

■ Defendant did preserve his objection to the State's characterization of him as a "dog" and a "virus." Defendant notes that it is improper for the State to characterize a defendant as an "animal," even when that characterization is supported by the evidence. (*People v. Johnson* (1987), 119 Ill. 2d 119, 139, 518 N.E.2d 100, 109.) However, the *Johnson* court also noted that such comments do not warrant reversal unless they are a material factor in defendant's conviction. (*Johnson*, 119 Ill. 2d at 139-40, 518 N.E.2d at 109-10.) Given the record on appeal, it does not appear that the comments in this case were a material factor in defendant's conviction.

Defendant further claims that the State improperly attempted to define reasonable doubt for the jury and shift the burden of proof. During closing argument, the prosecutor argued as follows:

> "Reasonable doubt, ladies and gentlemen, is something that you decide what it is. There will be no instruction that defines reasonable doubt. It's not a shadow of a doubt. It's not all doubt. It's beyond a reasonable doubt. In determining whether there is a reasonable doubt, you have to look at the things the defense pointed to and ask yourself, does that lead to the reasonable conclusion that he is not the one, that is a doubt."

A defense objection was overruled. The prosecutor continued, stating "The doubt that he is not the one, that it could have been someone else." Another defense objection was overruled. The State added, "Look at the allegations that they make. Does it [*sic*] point to somebody else?"

This court has previously indicated that arguments encouraging a jury to compare the reasonableness of the claims of the State and the defendant were not a material factor in securing a defendant's conviction. (See *People v. Epps* (1986), 143 Ill. App. 3d 636, 640, 493 N.E.2d 378, 381.) The statements quoted above, viewed in the context of the entirety of the closing arguments, fall within the scope of *Epps*.

In sum, defendant has failed to show that the comments made by the State during opening and closing arguments were a material factor in securing his conviction, given the facts and circumstances of this case.

V

Finally, defendant claims that the trial court abused its discretion in sentencing him to 45 years in prison. In general, the sentencing decision of the trial court is entitled to great weight and deference. *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.

■ Defendant claims that the sentences for armed robbery and aggravated criminal sexual assault are excessive. However, the record indicates that the trial court considered the record presented and imposed sentences that fall well within the scope of the sentencing statutes. There does not appear to be an abuse of discretion in this regard.

Defendant argues in the alternative that his five-year sentence for aggravated criminal sexual abuse should be made to run concurrently. The trial court imposed consecutive sentences for the armed robbery and aggravated criminal sexual assault pursuant to subsection (a) of the consecutive and concurrent sentencing statute, which expressly provides for consecutive sentencing where one of the convictions is for aggravated criminal sexual assault. (See Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—4(a).) The record also shows that the trial court imposed the consecutive sentence for aggravated criminal sexual abuse pursuant to subsection (b) of the consecutive and concurrent sentencing statute, which permits consecutive sentencing when the trial court finds that it is required to protect the public. See Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—4(b).

However, the trial court must also set forth a basis in the record for a finding that consecutive sentencing is required to protect the public in a given case. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—4(b).) A perfunctory recitation that the trial court considered the defendant's history and the trial proceedings in imposing a sentence generally falls short of this requirement. (*People v. Dorosz* (1991), 217 Ill. App. 3d 1016, 1022, 578 N.E.2d 67, 70.) Nevertheless, a general statement of reasons may suffice where a defendant's history or the facts of a particular case are such that the need to protect the public is obvious. See *Dorosz*, 217 Ill. App. 3d at 1022, 578 N.E.2d at 70-71.

In this case, the record shows that the trial court merely indicated that it was relying on the presentence investigation report and the arguments and evidence presented in aggravation and mitigation in reaching its sentencing decision. The finding that a consecutive

sentence for aggravated criminal sexual abuse was necessary to protect the public appears several pages later. Indeed, the "boilerplate" finding appears at the bottom of the final page of the transcript of the sentencing hearing.

■ In addition, we note that the record indicates that defendant was 19 years old on the date of the offenses and had no prior convictions as an adult or juvenile. Defendant also had a history of employment at a number of jobs. Defendant was living with his mother, one of his two sisters, the sister's husband and four children. In *People v. Geneva* (1990), 196 Ill. App. 3d 1017, 554 N.E.2d 556, this court modified a defendant's sentence for aggravated battery to run concurrently with his sentence for aggravated criminal sexual assault where the defendant was 22 years old at the time of the offense, had no prior criminal record and demonstrated a strong and supportive family. (*Geneva*, 196 Ill. App. 3d at 1030-31, 554 N.E.2d at 565.) Given the facts and circumstances of this case, including the fact that defendant has received two consecutive 20-year sentences on the other charges in this case, we conclude that the record does not support the bare finding that an additional consecutive sentence for aggravated criminal sexual abuse was necessary to protect the public. Thus, defendant's sentence for aggravated criminal sexual abuse is modified to run concurrently with his other sentences.

For all of the aforementioned reasons, defendant's convictions are hereby affirmed. Defendant's sentences for armed robbery and aggravated criminal sexual assault are hereby affirmed. Defendant's sentence for aggravated criminal sexual abuse is modified to run concurrently with the other sentences.

Judgments affirmed as modified.

BUCKLEY and O'CONNOR, JJ., concur.