THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARVIN WARE, Defendant-Appellant.

First District (2nd Division)   No. 1—99—3893

Opinion filed May 22, 2001.

Michael J. Pelletier and Christopher W. Buckley, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, William L. Toffenetti, and Bradley C. Giglio, Assistant State's Attorneys, of counsel), for the People.

JUSTICE COUSINS delivered the opinion of the court:

Following a bench trial, defendant Marvin Ware was convicted of aggravated criminal sexual assault and was sentenced to natural life in prison. On appeal, defendant argues that: (1) he was denied a fair trial when the trial court improperly admitted prior consistent statements; (2) his convictions should be reduced to criminal sexual assault; and (3) his natural life sentence was based on an unconstitutional statute under *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

## BACKGROUND

Defendant was indicted on 10 counts, 3 of which were nol-prossed

by the State before trial. The remaining counts included: two counts of aggravated criminal sexual assault, one count of criminal sexual assault, two counts of kidnaping, one count of aggravated criminal sexual abuse, and one count of unlawful restraint.

At the bench trial, C.K. testified that on August 19, 1998, around 5 p.m., she was on her way from work. She decided to stop by Bruegger's Bagel Bakery, where she had previously worked, to visit former coworkers. She entered through the front of the store and saw one former coworker at the register helping customers. C.K. also saw the defendant putting a new bag on the garbage can. C.K. and defendant had previously worked together about five times. After saying "hi" to them both, C.K. began talking to defendant about her new job. As they talked, C.K. began walking down a long hallway toward the back door with defendant following behind her. She walked past the women's washroom and said that she was going home. As C.K. stood in front of the men's washroom, the defendant grabbed her arm and pulled her into the men's washroom.

C.K. stated that she was surprised and shocked. Defendant turned off the lights in the bathroom, locked the door, and pinned C.K. against the wall with her arms behind her back. C.K. tried to say "no" and "stop" but defendant had his tongue in her mouth or covered her mouth with his hand. C.K. tried to push defendant off with her body but failed.

Defendant fondled C.K.'s breasts from outside of her clothing. Defendant said, "Don't worry, I'm not going to come in you." At this point, C.K. stated that she believed that she "was being raped." Defendant unbuckled C.K.'s pants and pulled her pants and underwear down to her knees. He then unzipped his own pants and pulled out his penis. C.K. felt defendant insert his penis inside her vagina and move back and forth. After a couple of minutes, defendant suddenly pulled back and said, "Oh, shit." Defendant had ejaculated a little bit on the floor, so he turned on the light, grabbed some toilet paper and finished ejaculating into the toilet paper.

Defendant then exited the bathroom. C.K. pulled up her pants and also left the bathroom. She saw the defendant standing with his back to her holding a mop bucket in his hand. C.K. left out the back door and went home. C.K. told a houseguest that something was wrong and to call her mother. C.K.'s mother came home and took C.K. upstairs. C.K. told her mother that she had been raped. Her mother would not let C.K. shower or change clothes and took her to the emergency room. At the hospital, C.K. completed a sexual assault kit. She testified that she had not had sex with anyone within 72 hours of the incident and was not sure whether defendant had ejaculated inside of her.

Nurse Delores Armstrong testified that she tended to C.K. on August 19, 1998. The physical exam revealed no vaginal trauma. Armstrong indicated it was not unusual that no vaginal trauma occurred during the rape. The vaginal and oral swabs from the sexual assault kit contained no evidence of semen. Examination by the Illinois State Police found semen on the crotch area of C.K.'s panties, though no sperm was detected and no DNA other than C.K.'s was found.

Sergeant Bruce Higgins of the Chicago police department interviewed C.K. at the hospital. He stated that C.K. appeared visibly shaken and upset and had to stop a couple of times as she threw up in a waste paper basket. She identified the perpetrator as a former coworker and indicated his first name. Higgins then proceeded to the men's bathroom of the bagel store. He testified that it was spotless, as though it had just been cleaned. The garbage can was empty and the floors were clean. Higgins checked the women's washroom and found the sink and toilet to be functioning. The police checked nine bags of garbage and recovered a large wad of toilet paper which was analyzed and found to contain no evidence of semen. Higgins obtained defendant's name and address and proceeded to his residence.

Defendant was arrested on August 20, 1998, around 1:30 a.m. Higgins interviewed defendant later that day. Defendant told Higgins that he first noticed C.K. in the bagel store when he opened the men's washroom door to clean it. Defendant said to C.K., "You know, why don't you use the women's washroom and get out of here?" He left her to do some other cleaning and when he came back, he found C.K. still inside the men's washroom. He yelled at her to leave and C.K. exited through the back door. When Higgins asked defendant why C.K. was in the men's washroom, defendant stated that he did not know. Following the interview, C.K. picked defendant out of a lineup at the police station.

C.K.'s mother, D.K., testified that she received a call from her houseguest on August 19, 1998, around 6 p.m. D.K. went home immediately and found C.K. crying in the living room. She observed that C.K.'s face was red, her eyes were puffy and she was shaking. D.K. testified that C.K. told her that she had been raped on her way home from work. D.K. stated that C.K. said it occurred at Bruegger's Bagels where she used to work and that her attacker was a former coworker named Marvin. D.K. then told C.K. that she should not shower and took her to the hospital.

Defendant was found guilty of two counts of aggravated criminal sexual assault predicated on unlawful restraint and kidnaping. The court indicated that while the defendant was also guilty of the other charges against him, they merged into these two counts. At the

sentencing hearing, the State introduced evidence of defendant's prior conviction for aggravated criminal sexual assault. Accordingly, the court sentenced defendant to natural life imprisonment.

Defendant appeals. We affirm.

## ANALYSIS

### I. WITNESS TESTIMONY

Defendant claims that he was denied a fair trial because the trial court erroneously admitted the hearsay testimony of C.K.'s mother. In defendant's view, such admission impermissibly bolstered C.K.'s testimony by identifying the defendant and providing details of the occurrence. Although defendant concedes that he failed to object at trial and failed to raise the issue in a posttrial motion, he urges this court to review the claim as plain error.

•1 The plain error doctrine may be invoked in criminal cases where: (1) the evidence is closely balanced; or (2) where the error was of such magnitude that the accused was denied a fair trial. *People v. Nieves*, 192 Ill. 2d 487, 502, 737 N.E.2d 150 (2000). In our view, the evidence in this case was not so closely balanced as to warrant plain error review. Evidence supporting conviction included male semen found in C.K.'s underwear; C.K.'s prompt reporting of the incident; her upset demeanor visible to Sergeant Higgins and her mother; and the opportunity for defendant to mop up and dispose of semen in the bathroom. On the other hand, there was only defendant's statement that C.K. was in the men's bathroom of her own accord and exited after defendant yelled at her to leave. We now turn to the merits of defendant's argument to determine whether the error, if any, was "so severe that it must be remedied to preserve the integrity of the judicial process." *Nieves*, 192 Ill. 2d at 503.

•2 In general, the testimony of a witness may not be bolstered by showing that she made similar statements out of court; however, a well-established exception exists for sexual assault cases where the prosecuting witness made a prompt complaint of the incident. *People v. Evans*, 173 Ill. App. 3d 186, 199, 527 N.E.2d 448 (1988). Evidence that a complaint was made is admissible to corroborate the victim's testimony. *People v. Damen*, 28 Ill. 2d 464, 473-74, 193 N.E.2d 25 (1963). The sole purpose of this exception is to rebut the presumption arising from the complainant's silence. Therefore, only the fact of the complaint is admissible; neither the details of the complaint nor the identity of the named perpetrator is admissible. *Damen*, 28 Ill. 2d at 473-74. Additionally, any error in the admission of hearsay testimony is ordinarily considered harmless where the testimony is supported by other corroborative evidence. *Evans*, 173 Ill. App. 3d at 200.

*Evans* and *People v. Brown*, 258 Ill. App. 3d 544, 630 N.E.2d 1106 (1994), are instructive. In *Evans*, the victim, G.B., testified that she told her friend that defendant "took advantage of [G.B.]" and also testified that she identified defendant to her friend during the conversation. *Evans*, 173 Ill. App. 3d at 202. The reviewing court held that the naming of defendant was improper since only the fact of the complaint, and not the details or identity of the perpetrator, is admissible. *Evans*, 173 Ill. App. 3d at 202. However, the court found the error to be harmless due to G.B.'s corroborative testimony:

> "[I]n light of G.B.'s positive and unwavering testimony that it was defendant who raped and sexually assaulted her, we conclude that any impropriety in the admission of this testimony, to which the defendant made no objection, was not so harmful as to constitute plain error." *Evans*, 173 Ill. App. 3d at 202.

In *Brown* the court held that the trial court properly admitted testimony of the victim's mother that did not contain any great detail of the incident. Specifically, the only details admitted were that men with guns took the victim's purse; that the victim was fondled and penetrated by a finger; and that a man tried to drag the victim into an alley. *Brown*, 258 Ill. App. 3d at 550. The court indicated that these were minimal details that showed only that the crimes occurred. Additionally, the testimony did not in fact name the offenders. Thus, the admission of the conversation between the victim and her mother was not error. *Brown*, 258 Ill. App. 3d at 550.

●3 In the instant case, C.K.'s mother testified as follows:

> "Q. Not getting into everything that occurred, but did you ask her what had happened?
>
> A. Yes. I asked her right away what had happened, and she said that she had been raped on her way home from work and that she had come home and that *** she needed to talk to me right away.
> ***
> Q. Did she state where she had been raped?
>
> A. I asked her and she said the Bruegger's Bagels, where she used to work.
>
> Q. Did she know the individual or was she able to identify who had done this to her?
>
> A. She said it was somebody she had worked with and I asked her who, who it was, and she said his name was Marvin, she wasn't sure what the last name was."

Unlike the victim's mother in *Brown*, C.K.'s mother here provided more than "minimal details that show[ed] only that crimes occurred." *Brown*, 258 Ill. App. 3d at 550. Thus, the admission of such testimony was error. However, like *Evans*, any error in the admission of hearsay testimony was harmless where the testimony was supported by other

corroborative evidence—namely, C.K.'s positive and unwavering testimony that it was defendant who raped and sexually assaulted her.

Defendant also relies upon *People v. Sommerville*, 193 Ill. App. 3d 161, 549 N.E.2d 1315 (1990). In *Sommerville*, the trial court admitted testimony by three of the State's witnesses which bolstered the victim's credibility. The victim's boyfriend, an officer who interviewed the victim, and a nurse who treated the victim were all permitted to testify that the victim identified the perpetrator as a "black male" and also provided details of the offense. *Sommerville*, 193 Ill. App. 3d at 172-73. On review, the court held that the improper admission of the prior consistent statements constituted reversible error. The court found the evidence to be closely balanced and that the testimony of the three witnesses tended to make the jury believe the victim over the defendant. *Sommerville*, 193 Ill. App. 3d at 176.

*Sommerville* is distinguishable from the instant case. First, the court found C.K.'s testimony clear and convincing and the evidence was not closely balanced like in *Sommerville*. Additionally, the concerns associated with the jury's reliance on prior consistent statements in *Sommerville*, coupled with the prosecutor's closing argument highlighting the corroborative evidence, are not present in a bench trial that did not close with such a summation. See *People v. Gilbert*, 68 Ill. 2d 252, 258, 369 N.E.2d 849 (1977) (trial judge is presumed to have considered only competent evidence in a bench trial).

Moreover, in rendering its decision, the court did not refer to the testimony of C.K.'s mother concerning defendant's identity or the details of the incident. The court merely noted that her mother indicated that C.K. appeared visibly upset. Instead, the court relied upon the following evidence to convict the defendant:

> "I note that [C.K.] testified clearly and concisely. I note that Sergeant Higgins said that she was visibly upset. I note that her mother said that she was visibly upset. I note that even though there was not DNA evidence, that there was evidence of semen found in her pants.
>
> I take into *** some consideration *** that most businesses clean up. *** And I note the Defendant's words, 'I will not come inside you.' For what reason is that? Obviously, you could infer from that there is an evidentiary reason. Secondly, 'Oh shit,' when the semen spilled on the floor."

In our view, defendant was not so prejudiced by the testimony of C.K.'s mother that it would have affected the outcome of the case or that it undermined the fundamental fairness of the trial. Since we conclude that defendant suffered no prejudice, his claim of ineffective assistance of counsel on this point also fails. See *People v. Foster*, 168 Ill. 2d

465, 475, 660 N.E.2d 951 (1995) (a court need not determine whether counsel's performance was deficient if it decides that the defendant suffered no prejudice from the alleged errors).

## II. CONVICTION

Defendant was convicted on two counts of aggravated criminal sexual assault committed during the course of a felony—one count based on unlawful restraint (count I), and the other count based on kidnaping (count II). Defendant argues that his convictions should be reduced to criminal sexual assault because unlawful restraint and kidnaping are lesser included offenses. The State concedes that count I (based on unlawful restraint) merges with criminal sexual assault and kidnaping. However, the State argues that the offense of kidnaping was not incidental to the offense of criminal sexual assault and that the conviction for count II should not be reduced.

•4, 5 Kidnaping occurs when a person knowingly and secretly confines another against her will or by force or threat of imminent force carries another from one place to another with intent to secretly confine her against her will. 720 ILCS 5/10—1 (West 1998). To determine whether an asportation or detention rises to the level of kidnaping as a separate offense, Illinois courts have adopted the test announced in *People v. Smith*, 91 Ill. App. 3d 523, 414 N.E.2d 1117 (1980). A court must consider the following four factors: (1) the duration of the asportation or detention; (2) whether the asportation or detention occurred during the commission of a separate offense; (3) whether the asportation or detention that occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense. *Smith*, 91 Ill. App. 3d at 529. "Whether an asportation is sufficient to constitute a kidnapping depends on the particular facts and circumstances of each case." *People v. Casiano*, 212 Ill. App. 3d 680, 687, 571 N.E.2d 742 (1991).

First, defendant contends that C.K.'s asportation was for an insufficient duration because she was merely taken a few feet from the hallway to the bathroom and the whole episode allegedly lasted only a few minutes. However, a kidnaping conviction is not precluded by the brevity of the asportation or the limited distance of the movement. *Casiano*, 212 Ill. App. 3d at 687 (victim forced to walk 1½ blocks at knife-point to defendant's apartment was sufficient asportation). Several cases are instructive. In *People v. Thomas*, 163 Ill. App. 3d 670, 516 N.E.2d 901 (1987), the victim was walking toward her van when two men forced her into the van and told her to lie down in the back. After the men drove the van for half a block, the victim escaped out of

the back passenger panel door. *Thomas*, 163 Ill. App. 3d at 672-73. The court held that the brevity of the asportation did not preclude a kidnaping conviction. *Thomas*, 163 Ill. App. 3d at 678.

*People v. Pugh*, 162 Ill. App. 3d 1030, 1033, 1035, 516 N.E.2d 396 (1987), similarly held that an asportation/detention for a short duration did not preclude a kidnaping conviction. In *Pugh*, the victim walked past defendant's car when defendant got out of the car and began to beat the victim. He then dragged her into the car and forced her to lie down on the backseat as the car was driven away. Within a few minutes, a police car stopped the vehicle. *Pugh*, 162 Ill. App. 3d at 1031-32. Although the victim was detained very briefly in the car, the court held that it was sufficient to satisfy the duration factor. *Pugh*, 162 Ill. App. 3d at 1035.

In *People v. Rush*, 238 Ill. App. 3d 806, 808, 816-17, 606 N.E.2d 132 (1992), the victim was standing outside the door of a cocktail lounge. Defendant grabbed the victim's arm and began to beat her. He then dragged her into an alley and forced her into the basement of an abandoned building before sexually assaulting her. *Rush*, 238 Ill. App. 3d at 808-10. The court rejected defendant's argument that the victim's asportation lasted an insufficient duration because she was merely dragged 50 feet and the incident only lasted five minutes. *Rush*, 238 Ill. App. 3d at 816-18. Similarly, in *People v. Lloyd*, 277 Ill. App. 3d 154, 164, 660 N.E.2d 43 (1995), the court found that the duration factor was satisfied where the asportation lasted approximately one block: the victim was taken by force from the street into an abandoned building before she was sexually assaulted.

In contrast, in *People v. Lamkey*, 240 Ill. App. 3d 435, 608 N.E.2d 406 (1992), the court reversed defendant's conviction for aggravated kidnaping. *Lamkey* involved a 10-year-old girl who was walking toward school when a man jumped out of the doorway of a building and pulled her into a hallway. He sexually assaulted her in the hallway, which was within public view and clearly visible to anyone walking or driving down the street. In fact, a passerby in a car observed the defendant with the victim and sounded his automobile horn, causing the defendant to release the victim and run upstairs. *Lamkey*, 240 Ill. App. 3d at 436-37. The passerby estimated that the asportation lasted two minutes. *Lamkey*, 240 Ill. App. 3d at 440. The court found that the victim was not detained for a substantial period of time. It also found that the asportation did not pose a more significant danger to the victim than that already posed by the sexual assault. The court concluded that the State failed to prove that sufficient asportation occurred. *Lamkey*, 240 Ill. App. 3d at 440.

●6 Here, C.K. was forced from the hallway into the men's

bathroom. Like the victims in *Thomas* and *Pugh*, she was only detained for a few minutes. Although the victim in *Lamkey* was also only detained for about two minutes, we find that case distinguishable. Unlike the hallway in *Lamkey*, which was clearly visible to the public and only steps away from a busy city thoroughfare, the locked bathroom here was concealed from public view. We also note that the defendant turned the bathroom light off, a fact that further hid his presence from a passerby. Also, even though the distance C.K. was taken (a few feet) was shorter than *Rush* (50 feet), *Lloyd* (one block), or *Thomas* (half a block), in our view, the limited distance of the movement did not preclude the finding of a separate kidnaping offense in the instant case.

Second, C.K.'s asportation occurred prior to, rather than during, the sexual assault. Courts have found that kidnaping constitutes a separate offense when the victim is transferred from one location to another before she is raped. See *Lloyd*, 277 Ill. App. 3d at 164 (victim's asportation from street to abandoned building occurred prior to sexual assault); *Casiano*, 212 Ill. App. 3d at 687 (victim was forced from the street into defendant's apartment before she was raped); *People v. Sherrod*, 220 Ill. App. 3d 429, 436, 581 N.E.2d 53 (1991) (victim's asportation from the street to a garage in adjacent alley took place before the sexual assault). Similarly, here, C.K. was forced from the hallway into a locked bathroom before she was raped.

Third, the forced movement of the victim from one place to another is not inherent in the offense of criminal sexual assault. 720 ILCS 5/12—13 (West 1998); *Lloyd*, 277 Ill. App. 3d at 164; *People v. Gully*, 151 Ill. App. 3d 795, 800, 502 N.E.2d 1091 (1986).

Fourth, the asportation posed a significant danger to C.K. independent of the danger created by the sexual assault. The danger arises from the potential for more serious criminal activity due to the privacy of the final destination, the locked bathroom in the instant case. *Sherrod*, 220 Ill. App. 3d at 436. In particular, a significant and independent danger arises where the victim is forced out of a public area and into a locked bathroom. Her signal for help is more difficult to detect and the likelihood that she would be observed by a passerby is greatly diminished. *Lloyd*, 277 Ill. App. 3d at 164-65; *Sherrod*, 220 Ill. App. 3d at 435-36.

In sum, the record indicates that kidnaping was not merely incidental to the sexual assault and defendant's conviction on count II was proper.

### III. SENTENCE

●7 Lastly, defendant argues that he was sentenced pursuant to an

unconstitutional statute under *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). In *Apprendi*, the court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

Defendant was convicted of aggravated criminal sexual assault committed during the course of a felony. 720 ILCS 5/12—14(a)(4) (West 1998). Section 12—14(d)(2) requires a court to impose a sentence of natural life imprisonment upon a repeat sex offender as follows:

"A person who is convicted of a second or subsequent offense of aggravated criminal sexual assault *** shall be sentenced to a term of natural life imprisonment." 720 ILCS 5/12—14(d)(2) (West 1998).

In the instant case, defendant was previously convicted of aggravated criminal sexual assault on June 20, 1996, in Illinois and sentenced to six years of prison. He was on mandatory supervised release from the Illinois State Penitentiary when C.K. was attacked. Because of his previous conviction for aggravated criminal sexual assault, the trial court was required to sentence defendant to a term of natural life. 720 ILCS 5/12—14(d)(2) (West 1998). Defendant contends that this recidivist provision is unconstitutional because he was entitled to a trial by jury to prove the fact of his previous conviction beyond a reasonable doubt. We disagree.

Under *Apprendi*, prior convictions are considered an exception to the general rule that facts which increase a penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2361-63. *Apprendi* indicated that the "fact" of a prior conviction contains procedural safeguards unlike other "facts" which increase punishment beyond the statutory maximum. *Apprendi*, 530 U.S. at 488, 147 L. Ed. 2d at 454, 120 S. Ct. at 2362. See also *People v. Lathon*, 317 Ill. App. 3d 573, 740 N.E.2d 377 (2000) (general rule requiring a jury determination of fact issues for sentencing did not apply to recidivist provision under *Apprendi*); *People v. Roberts*, 318 Ill. App. 3d 719, 743 N.E.2d 1025 (2000) (defendant's sentencing as a recidivist was not subject to *Apprendi* rule generally requiring any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be proven to a jury beyond a reasonable doubt); *People v. Ramos*, 318 Ill. App. 3d 181, 193, 742 N.E.2d 763, 774 (2000) ("*Apprendi* clearly exempts recidivist statutes").

58

For the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.

GORDON and McBRIDE, JJ., concur.