Docket No. 108778.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. AURELIA GONZALEZ, Appellee.

*Opinion filed January 21, 2011.*

CHIEF JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion.

## OPINION

The issue in this appeal is whether the State proved beyond a reasonable doubt that defendant "secretly confined" the victim within the meaning of the aggravated kidnapping statute. See 720 ILCS 5/10–1(a)(1), 10–2(a)(2) (West 2006). Following a jury trial, the circuit court of Cook County convicted defendant of aggravated kidnapping. A majority of the appellate court reversed defendant's conviction, finding that the State failed to prove secret confinement beyond a reasonable doubt. 392 Ill. App. 3d 323. For the reasons that follow, we reverse the appellate court's judgment.

## I. BACKGROUND

The State charged defendant, Aurelia Gonzalez, with unlawful restraint and two counts of aggravated kidnapping, one count based on secret confinement and the other count based on the threat or use of force. The aggravated kidnapping charge based on secret confinement alleged that on March 2, 2006, defendant knowingly and

secretly confined the victim, R.O., a child under the age of 13 years, against her will (720 ILCS 5/10–2(a)(2) (West 2006)).

At defendant's jury trial, the State presented the testimony of the victim's parents, Joel and Mirabel Oceguera. The victim, a female, was born on February 4, 2006. Approximately three weeks later, on the day of the underlying incident, Joel and Mirabel took their infant daughter with them to Joel's doctor appointment at Fantus Clinic in Stroger Hospital. After arriving, they sat in a large waiting room with about 100 other people. Mirabel saw defendant, whom Mirabel recognized from their neighborhood, in the waiting room. Defendant approached Mirabel and sat down next to her, although Mirabel did not invite her to do so. Defendant asked Mirabel about her baby's gender, age, and the hospital where she was born. Mirabel answered defendant's questions. Mirabel did not allow defendant to touch or hold the baby.

A woman sitting nearby asked defendant if she was pregnant, and defendant replied affirmatively. Defendant claimed to be between seven and eight months pregnant. Both Joel and Mirabel thought defendant appeared pregnant, but they could not see defendant's abdomen because she was wearing a coat.

Eventually, Joel was called to see the doctor. Mirabel and the baby went with Joel to the doctor's office. After the doctor visit, Joel, Mirabel, and their baby returned to the waiting room to wait for a referral order. Defendant was still in the waiting room. At some point, Mirabel left the waiting room to talk on her cellular phone, leaving the baby with Joel.

At about 3:30 p.m., Joel was called to the reception area to complete paperwork and receive his referral order. Joel took the baby with him to wait in line, but the baby was fussing and crying. Defendant approached Joel, offering to hold the baby while he completed the paperwork. Joel agreed and gave the baby to defendant. After Joel finished his paperwork, he looked for defendant and his baby, but could not find them. Joel exited the waiting room area and unsuccessfully searched for defendant and his baby inside the hospital. Joel left the hospital and went outside to continue his search. An unidentified person told Joel that a woman had recently left with a baby and pointed Joel in the direction the woman had gone.

In the meantime, Mirabel returned to the waiting room and

discovered that Joel and the baby were gone. Mirabel called Joel, who informed her that he could not find their baby and was searching for the baby outside. Mirabel left the hospital and called 911 to report that her baby was missing.

As Mirabel exited the hospital, she saw a police vehicle on the street. Mirabel flagged the vehicle down and told the police officers that someone had taken her baby. The officers radioed the information to the police station. Mirabel got inside the police vehicle and rode with the officers as they searched the area. During their search, the officers received a radio dispatch that a possible suspect had been apprehended at Rush University Medical Center (Rush), about two blocks away. The officers drove Mirabel to Rush. Upon entering Rush, Mirabel saw an officer holding her baby. The baby was wrapped in a white baby towel with pink trim that did not belong to her.

Damien Hopkins, a Rush security guard, was assigned to the emergency room on the day of the incident. At about 3:45 p.m., or approximately 15 minutes after the baby went missing from Fantus Clinic, Hopkins observed defendant holding a baby in a restricted area inside the Rush emergency room. The baby was wrapped in a white and pink blanket and was crying.

Suspicious of defendant being in the restricted area, Hopkins approached her and asked if she was okay. Defendant appeared nervous and did not respond to Hopkins. Instead, defendant walked away. Hopkins followed her, repeatedly asking her to stop. Defendant did not respond and continued to walk away from Hopkins, increasing her speed as Hopkins followed. Defendant tried to board an elevator, but was unsuccessful, and Hopkins was able to stop her. Defendant indicated she did not speak English, produced a $20 bill, and waived it in Hopkins' face. Hopkins then asked for assistance from a nurse standing near them, and the nurse was able to take the baby from defendant. Shortly thereafter, Hopkins saw a number of law enforcement officers enter the hospital.

Defendant was arrested at Rush. Law enforcement officers recovered from defendant a prepaid calling card, a white baby towel with pink trim, and receipts from the Stroger Hospital gift shop for those items.

Defendant's husband, Javier Gonzalez, also testified for the State. In March 2006, Javier and defendant, originally from Mexico, were

living in Cicero with their four children. After the birth of their youngest child in Mexico, defendant had a tubal ligation. Defendant, however, did not consent to the surgery. Instead, Javier and defendant's family members consented to defendant's surgery after the doctor warned them that defendant's life would be at risk if she ever gave birth to another child. Defendant was very upset when she learned of the surgery and realized she could never have another child, causing marital problems for Javier and defendant.

Almost a year before the underlying incident, defendant told Javier that she was pregnant. Javier repeatedly told defendant that he did not believe she was pregnant and questioned her daily about it. Javier's refusal to believe defendant made her upset. Nonetheless, defendant consistently maintained that she was pregnant and shared news of the pregnancy with other family members. Defendant claimed to go to doctor appointments but did not permit Javier to accompany her. Defendant also refused to allow Javier to touch or feel her abdomen area. Javier saw defendant put various items underneath her shirt, making her appear pregnant. Defendant never produced any medical documentation establishing her pregnancy.

On March 1, 2006, defendant told Javier that she had to go to the hospital to give birth. Defendant left the house alone and told Javier to watch their children. Javier did not see or speak to defendant again until 5 a.m. the following morning, March 2, 2006, the day of the incident, when defendant called to report she had given birth to a baby girl. Defendant, however, could not provide Javier with the address of the hospital. Javier later learned that defendant had been arrested.

Following the presentation of the State's case, defendant moved for a directed verdict on the two aggravated kidnapping counts. The trial court granted the motion on the count based on threat or use of force but denied it on the count based on secret confinement.

Defendant called two expert witnesses to testify on the issue of her mental health. An expert forensic psychiatrist opined that defendant was legally insane at the time of the offense. An expert psychologist concluded that defendant suffered from mental retardation and a depressive disorder and had an IQ of 58.

In rebuttal, the State presented the testimony of an expert clinical psychologist, who was unable to conclude that defendant suffered from mental retardation because of a lack of information. The

psychologist, however, opined that defendant was legally sane at the time of the offense. An expert forensic psychiatrist also evaluated defendant and concluded that she was legally sane.

Following closing arguments, the jury found defendant guilty but mentally ill of one count of aggravated kidnapping based on secret confinement and one count of unlawful restraint. The trial court imposed concurrent prison terms of six years and three years, respectively.

On appeal, defendant argued that the State failed to prove her guilty beyond a reasonable doubt of aggravated kidnapping when the evidence failed to show that she secretly confined the baby. A majority of the appellate court agreed, concluding that because the baby was in constant public view or awareness the baby was not secretly confined within the meaning of the aggravated kidnapping statute. 392 Ill. App. 3d at 327.

The dissenting justice asserted that the majority's decision ignored existing case law. Citing *People v. Mulcahey*, 72 Ill. 2d 282, 285 (1978), the dissenting justice stated that the secret confinement element was satisfied when the individuals impacted by the offender's actions, in this case the Ocegueras, were unaware of the victim's location. Additionally, although the baby was visible to the public, the public was unaware that the baby did not belong to defendant. 392 Ill. App. 3d at 330-32 (Gordon, J., dissenting).

This court allowed the State's petition for leave to appeal. 210 Ill. 2d R. 315.


## II. ANALYSIS

On appeal, the State argues that it proved beyond a reasonable doubt that defendant secretly confined the baby. The State argues that defendant secretly confined the baby when she removed the baby from the hospital without the parents' knowledge or consent and kept the baby in a location unknown to her parents.

When considering a challenge to the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the required elements of the crime beyond a reasonable doubt. *People v. Jackson*, 232 Ill. 2d 246, 280 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under this standard,

all reasonable inferences from the evidence must be allowed in favor of the State. *Jackson*, 232 Ill. 2d at 281.

The kidnapping and aggravated kidnapping statutes make it a Class X felony for an individual to knowingly and secretly confine a child under the age of 13 years against her will. 720 ILCS 5/10–1(a)(1), (b), 10–2(a)(2), (b) (West 2006). Under this theory of kidnapping, secret confinement is a necessary element. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 227 (2009). We review *de novo* the construction of a statutory element. *People v. Davison*, 233 Ill. 2d 30, 40 (2009).

Although the statute does not define secret confinement, this court has defined the term "secret" as concealed, hidden, or not made public. *Siguenza-Brito*, 235 Ill. 2d at 227. In turn, the term "confinement" is defined as the act of imprisoning or restraining someone. *People v. Phelps*, 211 Ill. 2d 1, 8 (2004). It is settled that the secret confinement element of kidnapping may be shown by evidence of the secrecy of the confinement or the secrecy of the location of the confinement. *Siguenza-Brito*, 235 Ill. 2d at 227; *Phelps*, 211 Ill. 2d at 8; *People v. Pasch*, 152 Ill. 2d 133, 187 (1992); *People v. Enoch*, 122 Ill. 2d 176, 195 (1988); *Mulcahey*, 72 Ill. 2d at 285.

We are also mindful of the purpose of the statutory element of secret confinement. At common law, kidnapping was a misdemeanor offense "defined simply as the unlawful confinement and transportation of another out of the country." 3 Wayne R. LaFave, Substantive Criminal Law §18.1(a), at 4 (2d ed. 2003). The offense was concerned with the "evil" of isolation, that "the victim would almost inevitably suffer a very lengthy, if not permanent, isolation from his or her normal society." John L. Diamond, *Kidnapping: A Modern Definition*, 13 Am. J. Crim. L. 1, 31 (Fall 1985).

As kidnapping became a statutory offense in the United States, some state legislatures, including Illinois's, added a requirement that the victim be secretly confined. 3 Wayne R. LaFave, Substantive Criminal Law §18.1(a), at 4 (2d ed. 2003). In these states, the idea of isolation of the victim from the public is central to the element of "secret confinement." In other words, confinement is secret where it "serves to isolate or insulate the victim from meaningful contact or communication with the public, that is, when the confinement is in a

place or in a manner which makes it unlikely that members of the public will know or learn of the victim's unwilling confinement within a reasonable period of time." 3 Wayne R. LaFave, Substantive Criminal Law §18.1(c), at 17 (2d ed. 2003). Thus, secret confinement can be shown through evidence that the defendant isolated the victim from meaningful contact with the public.

Here, the State's evidence showed that defendant was unable to have children because of a tubal ligation. Nevertheless, defendant desired additional children. Defendant told her husband, Javier, and family that she was pregnant, but Javier did not believe her. Eventually, defendant told Javier that she had given birth to a baby girl, but would not tell Javier the location of the hospital.

The same day that defendant told Javier she gave birth to a baby girl, defendant was with Joel, Mirabel, and their infant daughter in the waiting room of Fantus Clinic. While the baby was alone with Joel, defendant offered to hold the baby so Joel could complete paperwork. Joel agreed and gave the baby to defendant.

When Joel finished, defendant and the baby were gone. Joel and Mirabel notified law enforcement officials and searched unsuccessfully for their baby. Approximately 15 minutes later, however, defendant was apprehended with Joel and Mirabel's baby at nearby Rush University Medical Center.

Reviewing this evidence in the light most favorable to the State, we conclude that a trier of fact could reasonably find that defendant's conduct isolated the baby from meaningful contact with the public. The baby was unable to escape, cry out, or call attention to her plight. The evidence also suggested that defendant took the baby without the parents' permission or knowledge and sought to pass the baby off as her own, unbeknownst to anyone who saw defendant with the baby. Consequently, defendant's actions isolated the baby from the public even though defendant kept the baby in public view.

We reject defendant's argument that secret confinement exists only when a victim is clearly confined within a physical structure, usually a house or a vehicle. Significantly, this court has determined that "[c]onfinement includes, *but is not limited to*, enclosure within something, most commonly a structure or an automobile." (Emphasis added.) *Siguenza-Brito*, 235 Ill. 2d at 227. Moreover, the term "confinement" is broader than defendant claims. It encompasses the

act of imprisoning or restraining an individual. *Phelps*, 211 Ill. 2d at 8. An individual can be restrained without placing her inside a building, vehicle, or other physical structure. For example, kidnapping victims may be tied to a tree or bound by chains on a railroad track, thus satisfying the confinement element. Therefore, although a victim's confinement may often occur within a physical structure, there is no requirement, statutory or otherwise, that the victim *must* be held inside a physical structure. A determination of whether the victim has been confined necessarily depends on the circumstances of each case.

We also disagree with defendant's position, and the appellate court majority's similar conclusion, that secret confinement was not established in this case because defendant and the baby were always in a public place. See 392 Ill. App. 3d at 327 (finding "[i]t is the constant 'public view or awareness' of the child that takes this case out of the kidnapping statute"). This court long ago rejected any *per se* rule that a victim visible in a public place precludes a finding of secret confinement in *People v. Bishop*, 1 Ill. 2d 60 (1953).

In *Bishop,* the defendant, while test driving a car with a salesman, produced a gun and demanded money. The defendant ordered the salesman to drive the car for about four hours, until they reached a different city where the defendant ordered the salesman out of the car and took his personal belongings at gunpoint. The defendant pleaded guilty to kidnapping and kidnapping for ransom, both offenses that required proof of secret confinement. The defendant then sought relief on appeal in a *coram nobis* proceeding. *Bishop*, 1 Ill. 2d at 61-62.

In relevant part, this court rejected the defendant's assumption that there could be no secret confinement in a vehicle on a public roadway. We reasoned that a victim confined inside a vehicle moving on a public roadway may be more secretly and effectively confined from the kidnapper's viewpoint than a victim kept in a building. *Bishop*, 1 Ill. 2d at 64. In other words, we recognized that in certain instances keeping a victim in a public place may be more effective than taking the victim to a location out of the public's view. Simply put, the kidnapper may choose to hide the victim in plain sight.

### III. CONCLUSION

The State may prove the statutory element of secret confinement through evidence that the defendant's conduct isolated the victim from meaningful contact with the public. Here, after reviewing the evidence under the appropriate standard of review, we conclude that a reasonable trier of fact could find that the State proved beyond a reasonable doubt that defendant knowingly and secretly confined the victim, a child under the age of 13 years, against her will, thereby committing the offense of aggravated kidnapping. 720 ILCS 5/10–2(a)(2) (West 2006). Accordingly, we reverse the appellate court's judgment and affirm the circuit court's judgment.

Appellate court judgment reversed;
circuit court judgment affirmed.