2020 IL App (1st) 171819-U

THIRD DIVISION
September 30, 2020

No. 1-17-1819

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 17544 |
| | ) | |
| KENNETH BLACK, | ) | Honorable |
| | ) | Thomas J. Byrne, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices Ellis and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   The judgment of the circuit court of Cook County is affirmed in part and reversed in part; the State proved defendant secretly confined the victim by moving her six to ten feet from a sidewalk into a public park in the early morning hours where he sexually assaulted the victim; although defendant's conduct in moving the victim constituted a technical violation of the kidnapping statute, the asportation of the victim was inherent in the sexual assault, therefore defendant's conviction for aggravated kidnapping cannot stand and defendant's conviction and sentence for that offense are reversed and vacated.

¶ 2    The State indicted defendant for six counts of aggravated kidnapping "in that he knowingly and secretly confined T.T. against her will" and committed another felony against her, specifically criminal sexual assault (count I), criminal sexual abuse (count III), and/or aggravated battery (count V); the State also indicted defendant for aggravated kidnapping in that

he "knowingly and by force or threat of force carried T.T. from one place to another with the intent to secretly confine T.T. against her will" and committed another felony against her, specifically criminal sexual assault (count II), criminal sexual abuse (count IV), and/or aggravated battery (count VI). The State also indicted defendant for four counts of aggravated criminal sexual assault in that he "knowingly committed an act of sexual penetration upon T.T. *** by the use of force or threat of force" and caused bodily harm to T.T. in the form of abrasions (count VII), acted in such a manner as to threaten or endanger T.T.'s life by strangling her (count VIII), and/or the criminal sexual assault was perpetrated during the course of the felony of kidnapping (count IX), or aggravated battery (count X) by defendant. The State indicted defendant for aggravated criminal sexual abuse in that he "knowingly committed an act of sexual conduct upon T.T. *** for the purpose of the sexual arousal or gratification of [defendant] by the use of force or threat of force" and defendant caused bodily harm in the form of abrasions to T.T. (count XI), acted in a manner that threatened or endangered the life of T.T. by strangling her (count XII), and/or the aggravated criminal sexual abuse was committed during the course of committing the felony of kidnapping (count XIII), and/or aggravated battery (count XIV). The State indicted defendant for five counts of aggravated battery against T.T. (counts XV through XIX).

¶ 3    Following a bench trial the circuit court of Cook County convicted defendant of aggravated kidnapping under counts I, II, V, and VI; criminal sexual assault under counts VII, VIII, IX, and X; and aggravated battery under counts XV through XIX. The trial court sentenced defendant to six years' imprisonment for aggravated kidnapping under count I and merged the remaining kidnapping convictions under count I, and the court sentenced defendant to seven years' imprisonment for aggravated criminal sexual assault under count VII and merged the

remaining sexual assault charges under count VII. The court ordered the sentences to run consecutively. Defendant appeals, arguing the State failed to prove him guilty beyond a reasonable doubt of aggravated kidnapping where the evidence failed to establish that defendant confined the victim in secret or that defendant intended to secretly confine the victim where the alleged kidnapping was merely incidental to the sexual assault. Defendant does not challenge the sufficiency of the evidence to prove him guilty beyond a reasonable doubt of aggravated criminal sexual assault.

¶ 4    For the following reasons, we reverse defendant's conviction for aggravated kidnapping and vacate defendant's sentence.

¶ 5                                    BACKGROUND

¶ 6    The State adduced the following pertinent evidence at defendant's trial. The victim, T.T., was at her cousin's house in the area of 76th Street and Rhodes Avenue in Chicago in the late hours of September 28, 2013 into the early morning hours of September 29, 2013. T.T. left her cousin's house and went to her sister's house but no one was home. She then called her boyfriend and told him she was coming to his house. To get to her boyfriend's house T.T. walked to 69th Street and then to Loomis Boulevard and proceeded north on Loomis. Ogden Park abuts Loomis between 65th Street and 64th Street. As T.T. was walking on 69th Street she encountered defendant. Defendant asked T.T. for a cigarette. T.T. responded she only had one cigarette but she would share it with defendant. T.T. and defendant walked together for a short time on Loomis. After they shared the cigarette defendant "drifted back and took his hand on [T.T.'s] throat and took [her] behind [a] tree." When defendant took T.T.'s throat he was standing behind her and squeezing her neck.

¶ 7    T.T. testified that defendant guided her behind the tree with his hands still on her neck. T.T. testified the tree was between six and ten feet from the sidewalk where they had been walking. Defendant told T.T. to pull her pants down and not to say anything or he would kill her. Defendant forced T.T. to lay face down on the ground and sexually assaulted her.

¶ 8    After the sexual assault defendant got up and ran. T.T. watched defendant run away. Defendant turned and looked at her when he got across the street and was standing under a light pole. Defendant then continued running away and T.T. went to a police station that was one block away.

¶ 9    Defendant testified on his own behalf. Defendant testified that at some point, in the area of 64th Street and Loomis, T.T. suggested she and defendant go to a hotel. Defendant responded he did not have money for a hotel. Defendant testified he then offered T.T. $30 to "just kick it in the park" and T.T. agreed. Defendant stated that after T.T. agreed, "We found a secluded location and we drank and talked some more," while engaging in sexual foreplay. Defendant testified on cross-examination that they were "five to six feet away from the sidewalk" and "[not] really deep in the park."

¶ 10    Following closing arguments the trial court found, in pertinent part, that T.T. testified reasonably and credibly that she "was taken from where she was walked down the street into the park." The court noted that T.T. described going over behind a tree and that defendant described the same area. The court found that T.T.'s injuries "were accompanied by a threat that if she didn't comply she would be killed and the purpose of the injuries were to control and to get her as she testified alone, secreted in the park for the attack to occur." The court found T.T. "was taken from the street into the park" and at that point she was sexually assaulted. The court held that "[a]s to the Count 5, 6 aggravated kidnapping based on secretly confining the victim, forcing

the victim from one place to another based on the aggravated battery there will be a finding of guilty as to those two counts."

¶ 11    This appeal followed.

¶ 12                                    ANALYSIS

¶ 13    To sustain a conviction for aggravated kidnapping the State was required to prove defendant knowingly and secretly confined T.T. against her will, or that defendant carried T.T. from one place to another by force or threat of imminent use of force with the intent to secretly confine her against her will, and that defendant either inflicted great bodily harm on T.T. or committed another felony upon T.T.  720 ILCS 5/10-1(a)(1), (2) (West 2012), 720 ILCS 5/10-2(a)(3) (West 2012).  Defendant challenges the sufficiency of the evidence to prove him guilty beyond a reasonable doubt of aggravated kidnapping on the grounds (1) the State failed to prove he "secretly" confined T.T. where the confinement occurred six to ten feet from a public sidewalk by a tree in a public park and (2) the six-to-ten-foot carrying away (asportation) of T.T. was merely incidental to the sexual assault.  When a defendant challenges the sufficiency of the evidence to sustain a conviction the question for this court is whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt when viewing the evidence in the light most favorable to the State.  *People v. Sumler*, 2015 IL App (1st) 123381, ¶ 54.  This standard of review also applies to defendant's argument the asportation of T.T. was incidental to the aggravated criminal sexual assault.  *Id.* ¶ 53.

¶ 14    We first address defendant's challenge to the sufficiency of the evidence to establish the "secret confinement" element of the offense.  This court defines "secret confinement" as "imprisoning or restraining someone" or "enclosure within something, most commonly a structure or an automobile" in such a manner that the subject or the place is "concealed, hidden,

or not made public."  See *People v. Siguenza-Brito*, 235 Ill. 2d 213, 227 (2009), *People v. Phelps*, 211 Ill. 2d 1, 8 (1978).  "The secret confinement element may be shown by proof of the secrecy of the confinement or the secrecy of the place of confinement."  *Siguenza-Brito*, 235 Ill. 2d at 227, *Phelps*, 211 Ill. 2d at 8.  That is, the secret confinement element can be shown if those "liable to be affected by the act" are unaware that the victim is confined or those persons are aware the victim is confined but do not know where.  See *People v. Gonzalez*, 239 Ill. 2d 471, 480 (2011) ("confinement is secret where it 'serves to isolate or insulate the victim from meaningful contact or communication with the public, that is, when the confinement is in a place or in a manner which makes it unlikely that members of the public *will know or learn of the victim's unwilling confinement* within a reasonable period of time.'  3 Wayne R. LaFave, Substantive Criminal Law § 18.1(c), at 17 (2d ed. 2003)"  (Emphasis added.)); *People v. Mulcahey*, 72 Ill. 2d 282, 285 (1978) (holding victim "was 'secretly confined' as effectively in her own home as if [the] defendant asported her to some remote isolated place of confinement" where the defendant called the victim's husband and told him the victim was being held hostage but did not say where).  "This court long ago rejected any *per se* rule that a victim visible in a public place precludes a finding of secret confinement."  *Gonzalez*, 239 Ill. 2d at 481-82 ("Simply put, the kidnapper may choose to hide the victim in plain sight."), citing *People v. Bishop*, 1 Ill. 2d 60 (1953).

¶ 15    In this case, defendant argues that viewing the evidence in a light most favorable to the State, he did not "conceal, hide, or otherwise remove T.T. from the public's view or awareness" because "the entire incident *** took place out in the open in a public park."  Defendant asserts that "if a passerby happened to walk by *** they would have been able to see or hear T.T. and [defendant] just six to ten feet away—or even from the other side of the street," just as T.T. saw

defendant across the street under a light pole after he fled the sexual assault. In support of his argument defendant cites this court's decisions in *People v. Sykes*, 161 Ill. App. 3d 623 (1987), and *People v. Lamkey*, 240 Ill. App. 3d 435 (1992).

¶ 16    In *Sykes*, the defendant approached the ten-year-old victim as she walked to school, grabbed her by the arm, and dragged her into an alley. *Sykes*, 161 Ill. App. 3d at 625. The defendant threatened to kill the victim if she screamed and placed a gun to her head. The defendant pulled the victim through two or three alleys before attempting to gain entry to an apartment building, which the manager of the building denied. *Id*. The defendant pulled the victim down the street, the manager of the building followed, and when the victim saw another man across the street she yelled for help. *Id*. at 626. The defendant then ran away. *Id*. On appeal from his conviction for aggravated kidnapping the defendant argued "the State failed to prove beyond a reasonable doubt the 'secret confinement' element of the charged offense." *Id*. at 628. The defendant argued the victim was "not confined in any place or thing." *Id*. The *Sykes* court noted that Illinois courts had frequently discussed what proof was necessary to establish the "secret confinement" element of the offense and "[i]n such cases, the victim [had] clearly been 'confined' or enclosed within something, most commonly a house or a car." *Id*. The court held that in *Sykes*, "the victim simply was not confined or enclosed within any place or any thing." *Id*. The court held that fact "fails not only to establish the 'confinement' envisioned by Illinois courts, but also fails to establish the 'secret' component of the statute." *Id*. at 629. The court found:  " 'Secret' has been variously defined as: 'concealed; hidden; not made public ***.' [Citation.]  In the instant case, at no time was the victim 'concealed, hidden, or not made public' during the entire incident." *Id*. The Sykes court held the State had failed to prove the victim was "secretly confined" and reversed the defendant's conviction. *Id*.

¶ 17 In *Lamkey*, the defendant jumped from the doorway of a building, grabbed the ten-year-old victim as she walked down a busy Chicago street, and pulled her into the hallway of the building where he sexually assaulted her. *Lamkey*, 240 Ill. App. 3d at 436. The hallway was between the door to the street where the victim had been walking and an interior door that led upstairs and was open during the attack. *Id*. The victim testified she could see cars and pedestrians passing by during the attack in the small hallway. *Id*. at 437. One such driver saw the defendant pull the victim into the door. *Id*. The driver stopped his car in front of the door, sounded his car horn, and the defendant fled up the stairs at the back of the hallway. *Id*. The driver testified the attack "occurred in an area clearly visible to anyone walking or driving down the street." *Id*. On appeal the defendant argued the State failed to prove that a secret confinement occurred and that "the asportation of the victim was not established beyond a reasonable doubt because it was incidental to the properly entered conviction for aggravated criminal sexual assault." *Id*. at 438. The *Lamkey* court, relying on *Sykes*, held "the State failed to prove the element of secret confinement necessary to sustain a conviction for kidnapping." *Id*. at 439. The court noted that the defendant "remained within public view in the vestibule in an area clearly visible to anyone walking or driving down the street." *Id*. The court also held that "the asportation or detention which occurred here was merely incidental to the separate offense of aggravated criminal sexual assault." *Id*. at 440.

¶ 18 The State responds this case is factually distinct from *Sykes* and *Lamkey* and therefore neither is controlling. The State argues that in both of those cases, "the alleged kidnappings occurred in the morning daylight hours," in both cases "the defendant was seen in the act of taking the victim by members of the public, and neither defendant concealed the victim from the public view." In contrast, in this case "T.T. was dragged *** in the early hours of the morning,

close to 2 a.m., *** into a dark park" where she was "concealed behind a tree [and on the ground] *** and obscured from the view of any cars or pedestrians." Here, the State argues, no one saw T.T. because there was no one in the vicinity.

¶ 19    The State argues this case is more like *People v. Franzen*, 251 Ill. App. 3d 813 (1993) and argues for a similar result. In *Franzen*, the relevant issue was whether the defendant's petition for postconviction relief made a substantial showing, supported by the record, that the defendant's appellate counsel was ineffective in failing to argue on direct appeal that the State failed to prove the defendant guilty beyond a reasonable doubt of aggravated kidnapping. *Franzen*, 251 Ill. App. 3d at 819, 822. To resolve that issue the *Franzen* court considered the sufficiency of the evidence under the familiar *Jackson* standard[1] "for the limited purpose of determining whether appellate counsel's failure to raise the sufficiency of the evidence on direct appeal constituted ineffective assistance." *Id*. at 822-23.

¶ 20    In challenging the sufficiency of the evidence the defendant in *Franzen* argued that "no secret confinement was shown" in his case. *Id*. at 823. The *Franzen* court disagreed. *Id*. In *Franzen*, the victim had been lured to the rear of the parking lot of a bar where the defendant punched her in the face, chocked her unconscious, and dragged her "160 feet behind a fence into a sorghum field where the sorghum plants were of a height to conceal the defendant and [the victim] from anyone who might have wandered out into the parking lot." *Id*. at 816, 824. The defendant relied on *Sykes* on appeal and argued that "the dragging of the victim *** from one outdoor location to another does not establish secret confinement." *Id*. at 824. The *Franzen*

---

[1]    "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

court found *Sykes* "clearly distinguishable." *Id*. The court held that "where the victim was dragged against her will from a well-lit parking lot to a place in a dark field where she was concealed from public view and not free to leave, we find secret confinement was proven." *Id*. at 824.

¶ 21 Defendant argues this case is unlike *Franzen* "in a very significant way" in that in *Franzen* the court relied on the fact the victim was knocked unconscious and concealed from public view because the sorghum plants "were of a height to conceal the defendant and [the victim]." *Franzen*, 251 Ill. App. 3d at 824. In this case, defendant argues, T.T. was not unconscious and was "exposed to her public surroundings" except for whatever vantage point placed defendant and T.T. "behind" a tree. Thus, defendant argues "there was nothing here to completely conceal T.T. and [defendant's] presence from anyone." We agree with defendant that *Franzen* does not control the outcome in this case because here, unlike in *Franzen*, the victim was not concealed from view by her surroundings in a public place.

¶ 22 But neither do we find *Sykes* or *Lamkey* to be persuasive authority in this case. The *Sykes* court did not discuss or apply Illinois law rejecting "any *per se* rule that a victim visible in a public place precludes a finding of secret confinement." *Gonzalez*, 239 Ill. 2d at 481-82, citing *People v. Bishop*, 1 Ill. 2d 60 (1953). The *Sykes* court also failed to consider that "confinement" for purposes of kidnapping is broadly defined to include "restraining someone" (*Phelps*, 211 Ill. 2d at 8) or "where it 'serves to isolate or insulate the victim from meaningful contact or communication with the public' " (*Gonzalez*, 239 Ill. 2d at 480, citing 3 Wayne R. LaFave, Substantive Criminal Law § 18.1(c), at 17). But see 3 Wayne R. LaFave, Substantive Criminal Law § 18.1(c), at 17 ("a seizure on the public way *** which is or could readily be observed by bystanders *** is not one which meets [a] statutory requirement" of isolation in a place where

the victim is "not likely to be found") citing *State v. Green*, 94 Wash. 2d 216 (1980). Instead, the *Sykes* court relied solely on the fact the alleged confinement did not take the form of enclosure "within [a] place or [a] thing." *Sykes*, 161 Ill. App. 3d at 628. As the secret confinement element of kidnapping is not so limited, *Sykes* has limited utility in this case.

¶ 23    In *Lamkey* the court did not dispute that the victim was enclosed within a place when the defendant dragged her into the vestibule of his building. See *Lamkey*, 240 Ill. App. 3d at 438-39. Rather, *Lamkey* relied on the fact the defendant and victim at all times "remained within public view." *Lamkey*, 240 Ill. App. 3d at 439. However, the *Lamkey* court noted the fact that "[o]nce inside the hallway, the victim testified that she saw cars driving and people walking by on the sidewalk." *Id*. at 439. The court further noted that the driver saw the assault taking place after stopping his car. *Id*. (The *Lamkey* court did not seem to consider the trial court's reliance on the conclusion that the reason the driver who stopped the attack in that case "was able to see what had occurred was because he had seen [the] defendant abduct [the victim] off the street; thus, he had a focus on the particular victim." *Lamkey*, 240 Ill. App. 3d at 438.) We believe these are significant facts in *Lamkey* that are not present in this case and which weigh against defendant's argument in favor of a similar result.

¶ 24    Nonetheless, after reviewing the evidence in a light most favorable to the State, we conclude that a rational trier of fact could find that the State proved beyond a reasonable doubt that defendant secretly confined T.T. In this case, despite defendant's argument there is no evidence concerning "the general vehicular and pedestrian traffic *** on the specific night of the incident," in this case there is no evidence of passerby on the street to observe defendant forcing T.T. into the park or the ensuing assault on T.T. And, regardless of defendant's assertion we must decline to consider the State's "baseless claims" about the character of the street at the time

of the attack, we find that due to the time of morning it would not be reasonable to infer the presence of passerby on a residential street[2] who could have made those observations. See *People v. Beauchamp*, 241 Ill. 2d 1, 10 (2011) (citing *Cunningham* for proposition that "courts may notice matters of common knowledge), citing *People v. Cunningham*, 212 Ill. 2d 274, 281 (2004). We note that in reply to the State's argument distinguishing *Sykes* and *Lamkey* defendant argues this court should focus on "the characteristics and locations of the alleged confinement." Defendant argues that in both of those cases the time of day of the alleged kidnappings was not a dispositive factor but concedes that "the time of day may have made it more likely that the victims would be seen by passers-by." Defendant admits the logical complement that the time of day of the attack on T.T. made it less likely that she would be seen by passers-by but argues that "does not mean that a pedestrian *** or someone in a car *** could not see or hear T.T." and further argues "there was nothing about T.T.'s *location* that concealed her or removed her from the public's view." (Emphasis in original.) We do not assign dispositive weight to the fact it was *possible* for T.T. to be seen from the street if that were unlikely nor focus solely on the location of the alleged confinement. See *Gonzalez*, 239 Ill. 2d at 480-81 (defining secret confinement in terms of what is likely given the manner of confinement and holding that the "determination of whether the victim has been confined necessarily depends on the circumstances of each case"). See also *People v. Turner*, 282 Ill. App. 3d 770, 780 (1996) (noting, in part, defendant took the victim to "a secluded area without much traffic at that hour").

---

[2]     "In *People v. Biocic*, 80 Ill. App. 2d 65, the court stated that the trial court had a right to take judicial notice of the nature of the area involved. A court may take judicial notice of whatever may be known by common observation, since a court is presumed to be as well informed as the general public and can certainly take judicial notice of that which everyone knows to be true." *People v. Taylor*, 95 Ill. App. 2d 130, 137 (1968).

The "characteristics of the alleged detention" on which defendant wants this court to focus include the location, time of day, and other surrounding circumstances.

¶ 25    In *Gonzalez*, the defendant was in a hospital waiting room with the father of the three-week old victim when the defendant offered to hold the baby while the father completed some paperwork. *Gonzalez*, 239 Ill. 2d at 474.  After the father finished the paperwork he could not find the defendant or his baby. *Id*.  The defendant had taken the baby to a different nearby hospital. *Id*.  A security guard became suspicious of the defendant and approached her but the defendant walked away with the baby. *Id*. at 475-76.  The guard was eventually able to stop the defendant and took the baby away from her. *Id*. at 476.  On appeal to our supreme court from the lower court's decision reversing the defendant's conviction, the State argued it proved beyond a reasonable doubt that the defendant secretly confined the baby "when she removed the baby from the hospital without the parents' knowledge or consent and kept the baby in a location unknown to her parents." *Id*. at 478.  Our supreme court noted that "the term 'confinement' is defined as the act of imprisoning or restraining someone." *Id*. at 479, citing *Phelps*, 211 Ill. 2d at 8.  The court found that the defendant's actions "isolated the baby from the public even though [the] defendant kept the baby in public view." *Id*. at 481.  The court noted that an "individual can be restrained without placing her inside a building, vehicle, or other physical structure." *Id*. The court "recognized that in certain instances keeping a victim in a public place may be more effective than taking the victim to a location out of the public's view." *Id*. at 482.

¶ 26    Although defendant makes much of the fact that what constitutes "behind" a tree depends on the vantage point of the observers, viewing the evidence in a light most favorable to the State a rational trier of fact could infer that defendant took T.T. to a position where they would be obscured from view by an observer from the street.  A rational trier of fact could also reasonably

infer that there was no one to observe defendant and T.T. from the opposite vantage point, *i.e.*, from inside the park, at approximately 2 a.m. By taking T.T. into the park and away from the street, in the early morning hours, and forcing her to lie down "behind" a tree (*i.e.*, out of view of the public street), defendant "isolated the victim from meaningful contact with the public." *Gonzalez*, 239 Ill. 2d at 482. This manner of confining T.T. was "more effective than taking [T.T.] to a location out of the public's view" (*id.*) because doing so would have required defendant to continue to force defendant down the sidewalk to a different location. Instead, by forcing T.T. into the park and to lie behind a tree, defendant "isolated [T.T.] from meaningful contact with the public" (*id.* at 480-81). We hold the State proved beyond a reasonable doubt that defendant secretly confined T.T.

¶ 27    We now turn to defendant's argument that his conviction should be reversed because the asportation was merely incidental to the sexual assault.

> "In *People v. Eyler*, 133 Ill. 2d 173, 199 (1989), our supreme court
> reiterated the *Levy–Lombardi* doctrine, under which a defendant 'cannot be
> convicted of kidnapping where the asportation or confinement of the victim was
> merely incidental to another crime, such as robbery, rape or murder.' A court
> must consider the following factors to determine whether the asportation amounts
> to the independent crime of kidnapping: '(1) the duration of the asportation or
> detention; (2) whether the asportation or detention occurred during the
> commission of a separate offense; (3) whether the asportation or detention is
> inherent in the separate offense; and (4) whether the asportation or detention
> created a significant danger to the victim independent of that posed by the
> separate offense.' *Siguenza–Brito*, 235 Ill. 2d at 225-26; *People v. Jackson*, 331

Ill. App. 3d 279, 294 (2002). Whether the asportation constitutes a kidnapping is fact specific and depends on the circumstances of each case. [Citation.]" *People v. Johnson*, 2015 IL App (1st) 123249, ¶ 24.

¶ 28 This court adopted the *Levy-Lombardi* test in *People v. Smith*, 91 Ill. App. 3d 523 (1980). There, the court wrote as follows:

"In establishing an approach for this State to follow, we would adopt four factors suggested by *Government of the Virgin Islands v. Berry*, 604 F.2d 221 (3rd Cir. 1979). Those factors are:

'(1) ([t])he duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.' [Citation.]" *Smith*, 91 Ill. App. 3d at 529.

In *Smith*, the court held that "the gist of the case [was] robbery" and that the trial court's judgment on a jury verdict finding the defendants guilty of aggravated kidnapping was improper. *Id*. at 529. The defendants had jumped into an occupied car parked at a curb, told the occupant not to make any noise or he would be killed, and drove off with the victim in the car. *Id*. at 525. The defendants demanded the victim's money. *Id*. The defendants drove to a gas station to obtain gas then continued driving with the victim still in the car. *Id*. A short time later the defendants stopped the car and let the victim out. *Id*. The defendants were soon stopped by police. *Id*. at 526. The *Smith* court relied on the decisions from which the *Levy-Lombardi* rule arose and expressly adopted the position taken by the *Levy* court, which had stated as follows:

" 'We *** limit the application of the kidnapping statute to "kidnapping" in the conventional sense in which that term has now come to have acquired meaning. There may well be situations in which actual kidnapping in this sense can be established in conjunction with other crimes ***. But the case now before us is essentially robbery and not kidnapping.

In the case before us the movement of the automobile, which was itself the situs of the robbery, was not essentially different in relation to the robbery than would be the tying up of a victim in a bank and his movement into another room. In essence the crime remained a robbery although some of the kidnapping statutory language might literally also apply to it.' [Citation.]" *Id*. at 527, quoting *People v. Levy*, 15 N.Y.2d 159, 165 (1965).

The *Smith* court found the case before it was only a robbery and not also a kidnapping because "[t]he victim was driven for a short distance—approximately 20 minutes from where he first encountered [the] defendants. During that time, [the] defendants took control of his car and personal property while threatening the use of force." *Id*. at 529. The court held the asportation was merely incidental to the commission of a felony "and offered no significant danger to the victim independent of that posed by the felony." *Id*.

¶ 29    Thereafter, in *People v. Enoch*, 122 Ill. 2d 176 (1988), one dissenting justice wrote that our supreme court should take the opportunity presented in that case "to distinguish between asportations and secret confinements that are merely incidental to an underlying forcible felony and those that in fact implicate the separate dangers kidnapping statutes address." *Enoch*, 122 Ill. 2d at 219 (Simon, J., specially concurring in part and dissenting in part). The dissenting justice found that "the real harm" that the offense of kidnapping addresses is "that by carrying

the victim away or secreting the victim, the victim is not only confined but also dispossessed of legal and societal protection." *Id.* The dissenting justice also noted that "a denial of legal and societal protections is assumed to occur during the time an independent crime is being perpetrated against the victim." *Id.* The dissenting justice concluded by suggesting "that if the asportation or confinement in a particular case is not inherent in the substantive crime, but substantially facilitates the commission of that other offense and enhances the risk to the victim, then a conviction for kidnapping could be affirmed." *Id.* at 220.

¶ 30    The majority felt that the issue should be decided when a proper factual pattern was presented to the court. *Id.* at 197. Nonetheless the majority stated it did "not argue with the logic of the dissent's contention that an aggravated kidnapping conviction should not be sustained where the asportation or confinement may constitute only a technical compliance with the statutory definition but is, in reality, incidental to another offense." *Id.* Later, applying this rule in *People v. Eyler*, 133 Ill. 2d 173, 200 (1989), our supreme court held that "the confinement which occurred in [that] case *** was not 'incidental to' [a] murder." In *Eyler*, our supreme court held that the evidence supported

> "the inference that when [the] defendant induced the victim to go to [the]
>
> defendant's apartment for the supposed purpose of prostitution, [the] defendant
>
> had something else in mind: to bind *** torture, and stab his victim before
>
> murdering him, in a place where the victim was beyond the reach of anyone who
>
> could help him. The confinement necessary to accomplish this cannot be said to
>
> be incidental to the crime of murder." *Eyler*, 133 Ill. 2d at 200.

See also *People v. Cole*, 172 Ill. 2d 85, 104 (1996) (holding the record contained "sufficient evidence from which the judge could have concluded that the defendant's actions constituted

aggravated kidnapping, and that the confinement *** was not merely incidental to another offense"). In *Cole*:

"After shooting and killing Ruth Caulk and shooting and injuring Shane Caulk, the defendant ordered Stacey and Shane to 'go for a ride' with him. The defendant sat in the back seat of the car holding the gun, while Stacey drove and the injured Shane sat in the front passenger seat. The defendant eventually directed Stacey to drive to an isolated area referred to in the record as 'Lover's Lane,' where the defendant ordered Shane from the car and then shot and killed him." *Cole*, 172 Ill. 2d at 105.

¶ 31 In this case, defendant argues (1) the asportation was brief, lasting only the few seconds required to walk six to ten feet from the sidewalk to the tree; (2) the asportation occurred to accomplish the sexual assault and arose out of defendant's commission of that separate offense; (3) the asportation and confinement were inherent in the sexual assault because the sexual assault was defendant's sole purpose and the duration of the kidnapping was only long enough to commit the sexual assault; and (4) the asportation and detention did not pose any significant danger to T.T. aside from the sexual assault because the location in the park did not create the potential for more serious activity due to the privacy of the final destination and defendant's threats were only in relation to the sexual assault and not the kidnapping.

¶ 32 The State responds the kidnapping was not incidental to the sexual assault because (1) the brevity of the asportation is not dispositive and the duration of the kidnapping here "is sufficient to uphold the *** conviction;" (2) the asportation and detention occurred prior to, not during, the commission of the sexual assault because it was not until defendant and T.T. were behind the tree that defendant "forced her to the ground and began the sexual assault;" (3) the asportation or

detention was not inherent in the separate offense because "asportation is not an element of criminal sexual assault" and defendant did not need to transport T.T. to sexually assault her; and finally, (4) the asportation or detention created a significant danger to the victim independent of that posed by the sexual assault because the concealment of T.T. behind a tree "increased the danger *** where it made it highly unlikely that she would be able to get the attention of a passer-by or would be discovered" and the "likelihood of her being murdered or injured *** greatly increased."

¶ 33    Based on the foregoing authorities we find that the *Levy-Lombardi* test is less of a quantitative analysis than it is a qualitative one.  The qualitative question to be answered by application of the *Levi-Lombardi* factors is whether the acts constituting the alleged kidnapping resulted in isolating the victim from legal and societal protections—including protection from the risk of harm—to a greater degree than the commission of the separate felony alone or, whether the alleged kidnapping was merely *essential to and characteristic of* the separate felony.  See https://www.merriam-webster.com/dictionary/inherent (visited November 18, 2019) (defining inherent as "involved in the constitution or essential character of something"); see also *People v. McCarter*, 2011 IL App (1st) 092864, ¶ 65 (discussing *People v. Lamkey*, 240 Ill. App. 3d 435 (1992) and *People v. Smith*, 91 Ill. App. 3d 523 (1980)[3]), overruled on other grounds by *People*

---

[3]    "In *Lamkey*, 240 Ill. App. 3d at 440, the defendant jumped out of a doorway, grabbed the victim, pulled her into a hallway, and sexually molested her. [Citation.] The detention of the victim lasted two minutes; *apparently only long enough to commit the sexual assault.* [Citation.]  ***  In *Smith*, the defendants approached the victim while he was in his car and forced their way into the car. [Citation.] The defendants then drove the victim around for approximately 20 minutes, during which time the defendants took the victim's money, his wallet, and finally his car. [Citation.]  The court held 'the gist of the case' was robbery and determined *the kidnapping was merely incidental to the robbery because the defendants used the 20 minutes to take control of the victim's personal property and car, after which the defendant immediately released the victim.* [Citation.]  Here, the defendant held Bias at gunpoint for approximately 35 minutes before killing Bias. We are unpersuaded that the defendant should be found not culpable for kidnapping simply because the defendant waited to commit the murder until the car was

*v. Reese*, 2017 IL 120011, ¶ 42.  We find this view also supported by *People v. Williams*, 263 Ill.

App. 3d 1098 (1994), where this court found the defendant was properly convicted of sexual

assault and kidnapping.  *Williams*, 263 Ill. App. 3d at 1106-07.  The *Williams* court found the

detention in that case "lasted for a significant period of time" (*id*. at 1106), then reasoned as

follows:

> "[T]he defendant's *criminal conduct went beyond that required for the*
>
> *commission of the sexual assault crime*.  While defendant assaulted his first
>
> victim, he held the second at gun point.  While he assaulted his second victim, he
>
> similarly held his first victim.  Thus, each victim was detained both prior to and
>
> after being violated, *significantly longer than the amount of time necessary to*
>
> *accomplish the defendant's sexual assault against her*.  This type of detention is
>
> *not inherent in the sexual assault offense* and indicates that *the kidnaping of the*
>
> *victims was the result of independent criminal conduct*.  While the kidnaping was
>
> certainly related to the sexual assault, these charges are sufficiently dissimilar to
>
> warrant distinct criminal convictions."  (Emphases added.)  *Id*. at 1107.

¶ 34    Defendant cites *Lamkey*, 240 Ill. App. 3d 435, which held that "the asportation or

detention which occurred [in that case] was merely incidental to the separate offense of

aggravated criminal sexual assault."  *Lamkey*, 240 Ill. App. 3d at 440.  In determining whether

the "act of detention or asportation [rose] to the level of kidnapping as a separate offense" the

*Lamkey* court applied the *Levy-Lombardi* factors.  *Id*. at 439-40.  In that case, the court found

that "the asportation *** lasted only for two minutes," the victim "was not detained for any

---

driven to an isolated area."  (Emphases added.)  *People v. McCarter*, 2011 IL App (1st) 092864, ¶ 65,
overruled on other grounds by *People v. Reese*, 2017 IL 120011, ¶ 65.

substantial period of time," and the asportation did not pose a "more significant danger to the victim than that already posed by the sexual assault." *Id*. at 440. The court also found that "the asportation and detention occurred during the commission of the aggravated criminal sexual assault, and *** such detention is of course, inherent to that offense." *Id*. As noted above, in *Lamkey*, the defendant grabbed the victim off a busy street when traffic and pedestrians were present, pulled her into the vestibule of a building that was visible from the street, and proceeded to sexually assault her before a passer-by intervened and stopped the assault. *Id*. at 436-37.

¶ 35    However, we find the circumstances of this case bear closer resemblance to those initially presented in this court's recent decision in *People v. Johnson*, 2015 IL App (1st) 123249, which the State cites in support of its position. In *Johnson*, the victim was walking down a public street in the early morning hours when the defendant "approached her from behind, started choking her by putting his arm around her neck, told her to be quiet and said he would kill her if she screamed." *Johnson*, 2015 IL App (1st) 123249, ¶ 5. The defendant then moved the victim from the sidewalk to an adjacent vacant lot. *Id*. ¶ 6. The opinion does not state how far this asportation was, but "[a] couple of cars drove past and someone walked just inches away from them." *Id*. The defendant again threatened to kill the victim if she screamed, forced her down on the ground, and while they were on the ground sexually assaulted her by digital penetration. *Id*. The defendant and the victim then got up and while defendant was still choking the victim he pushed her toward a nearby alley and then to an area between two garages off the alley. *Id*. ¶ 7. The victim estimated the second distance they traveled to be "a couple of feet" but the court found that "photographs admitted into evidence show the distance between the vacant lot and the area between the two garages was greater." *Id*. When they got to the area between the two garages the defendant was still choking the victim. He then sexually assaulted her two more

times both by penile penetration. *Id.* Following his convictions for aggravated kidnapping and aggravated criminal sexual assault, the defendant appealed. *Id.* ¶ 17.

¶ 36 On appeal the defendant argued the State failed to prove beyond a reasonable doubt the asportation element of the offense. *Id.* ¶ 20. Applying the *Levy-Lombardi* doctrine, this court found the facts supported the defendant's conviction for aggravated kidnapping. *Id.* ¶ 24. Nonetheless, we believe the court's findings with regard to the initial asportation in *Johnson* provide persuasive authority that the asportation and detention in this case was not a separate offense.

¶ 37 First, as to the duration of the asportation, the *Johnson* court relied on both the combined asportation from the sidewalk to the vacant lot and to the area between the two garages ("[the defendant] moved [the victim] from a sidewalk to a vacant lot and then from the vacant lot across an alley to an area between two garages") or the asportation from the vacant lot to the area between the two garages alone ("the asportation extended from the vacant lot to the rear of a city lot [to an area between two garages]") but it clearly did not rely on the asportation from the sidewalk to the vacant lot alone. See *id.* ¶ 25. Notably, the court took care to point out that the victim's testimony that the defendant "dragged her 'a couple feet away' [from the vacant lot to an area between two garages] is contradicted by the photographs of the scene." *Id.*

¶ 38 Second, the court found the asportation occurred during the commission of a separate offense because the defendant did not sexually assault the victim as he moved her. *Id.* ¶ 26. The *Johnson* court stated this factor was satisfied because *both* "the asportation from the sidewalk to the vacant lot and from the vacant lot to the area between the two garages occurred before, rather than during, a sexual assault." However, the court then found that there was no evidence the defendant sexually assaulted the victim "as he moved her from the vacant lot across the alley to

the area between the garages." *Id*. The court found that the sexual assault in the vacant lot was separate and distinct from the sexual assault in the area between the two garages. *Id*. Thus, it is unclear whether the *Johnson* court would find this factor satisfied based on the sexual assault in the vacant lot alone where it specifically noted that the assault in the vacant lot was separate and distinct from the assault between the garages but, in finding that the kidnapping constituted a separate offense, noted there was no sexual assault during the asportation between the assault in the lot and the assault between the two garages. From this we find the *Johnson* court either found the second asportation to be "the commission of a separate offense" for purposes of the *Levy-Lombardi* test and not the first asportation from the street to the vacant lot or failed to comment on whether the first asportation was a separate offense.

¶ 39    Third, the *Johnson* court held "asportation is inherent in a separate offense when it is an element of that offense." *Id*. ¶ 27, citing *People v. Quintana*, 33 Ill. App. 3d 96, 108 (2002). It stated: "Asportation of a victim is not an element of aggravated criminal sexual assault. [Citations.]" *Id*. In conjunction with that finding the *Johnson* the court specifically found that "when [the defendant] moved [the victim] from the vacant lot to the rear of the lot and ultimately, to the area between the two garages against her will, [the defendant] committed a separate offense." *Id*. This conclusion by the *Johnson* court further supports reading the decision to hold only that the asportation from the vacant lot to the area between the two garages constituted the separate offense and not the asportation from the public sidewalk to the vacant lot (where the first sexual assault occurred). Regardless, the *Johnson* court did not expressly find this element of the *Levy-Lombardi* test satisfied based on the shorter asportation of the victim from the sidewalk to the vacant lot. See *id*. Stated differently, *Johnson* does not provide a clear holding that the asportation from the sidewalk to the front of the adjacent vacant lot—we may

infer the first assault occurred at the front of the lot because the court noted the defendant then transported the victim to the rear of the lot—was not inherent in the sexual assault that occurred in the vacant lot.

¶ 40    Fourth, the *Johnson* court held the asportation created a significant danger to the victim independent of the danger created by the sexual assault. *Id.* ¶ 28. Here, the court expressly made that finding relative to the asportation from the vacant lot to the area between the two garages and not the asportation from the sidewalk to the vacant lot. See *id*. The court found that "[w]hile [the defendant] and [the victim] were in the vacant lot, vehicles drove by and an individual walked past undoubtedly prompting [the defendant] to move [the victim] to the more secluded and private area, which demonstrates his intent to secretly confine [her] during the assault." *Id*. The court found that in doing so the defendant "heighted the danger to [the victim] by decreasing the likelihood that anyone would see or hear what was transpiring, especially in the dark in the middle of the night." *Id*. The court also found that the fact that the defendant threatened to kill the victim and was choking her, and that defendant moved her from the vacant lot to a more secluded area between the two garages, "both *** increased the danger to her." *Id*. This case is unlike *Johnson*, however, in that here, defendant did not move the victim to a "more" secluded location than when the offense began thereby "decreasing the likelihood that anyone would see or hear what was transpiring." We cannot say the area behind the tree six feet from the sidewalk was "more secluded and private" or involved a "heightened" danger that no one would see or hear what was transpiring than was involved in the sexual assault had defendant not moved T.T. behind the tree but chose to remain on or near the sidewalk adjacent the park at 2 a.m.

¶ 41    In contrast, we find that the cases relied upon by the State involve a detention and/or asportation that did result in isolating the victim from legal and societal protections—including protection from the risk of harm—to a greater degree than the commission of the separate felony either because the defendant moved the victim to an area that could reasonably be characterized as "more secluded" than the situs of the original felony or encounter with the defendant, the victim was moved a significantly greater distance for a longer period of time, or the victim suffered a significantly higher degree of isolation *after* the asportation, such that the alleged kidnappings in those cases could reasonably be found not inherent in the commission of another felony.

¶ 42    For example, in *People v. Ware*, 323 Ill. App. 3d 47 (2001), the victim had been talking to the defendant in the front of a bagel store. *Ware*, 323 Ill. App. 3d at 49.  The defendant followed the victim down a "long hallway toward the back door" (and away from any customers or employees serving them) and pulled her into the men's washroom where the defendant "turned off the lights [and] locked the door" (making the washroom appear closed or unoccupied). *Id*. In *Ware*, the asportation and detention significantly decreased the likelihood anyone would see or hear what was transpiring (the sexual assault) compared to where the defendant encountered the victim before moving and detaining her.  After the victim was secluded in the washroom, away from customers and other employees, the defendant sexually assaulted her. *Id*.

¶ 43    In *People v. Pugh*, 162 Ill. App. 3d 1030, 1035 (1987), also relied upon by the State, the victim had been in the parking lot of her apartment building at approximately 2 a.m. when the defendant, who was in the back seat of a vehicle with another man, "got out of the car punched [the victim] in the face five or six times, and forced her into the car." *Pugh*, 162 Ill. App. 3d at

1031-32. The other occupant of the vehicle drove away. *Id*. at 1032. The defendant held the victim down on the backseat of the car such than the victim could not see where they were going. *Id*. The *Pugh* court held that the evidence in that case was sufficient to support the defendant's convictions for aggravated kidnapping and aggravated battery. *Id*. at 1034. The court held that a conviction for kidnapping in addition to the separate offense is *improper* "where the separate, 'ultimate' offense, such as robbery or rape, could not be committed in the form planned without the limited asportation inherent in the crime." *Id*., citing *Smith*, 91 Ill. App. 3d at 528.

¶ 44    The *Pugh* court found that the defendant in that case had committed an aggravated battery in the parking lot and then "forced the victim into the car *** and held her down on the back seat so as to conceal her." *Id*. The court found those facts distinguished *Pugh* from "those cases in which the offense of kidnapping may be considered incidental to the separate offense and where convictions for both crimes are improper." *Id*. The *Pugh* court concluded that the "defendant's action in striking the victim in the parking lot and in the car were separate acts from his transporting her with the intent to confine her." *Id*. at 1035. We also note that, as in *Ware* and the second asportation in *Johnson*, in *Pugh*, the victim was taken to a location that was "more secluded" than the initial encounter with the defendant—to the backseat of a moving vehicle in the early morning hours—making it much less likely anyone would see what was transpiring in the car than if the car had remained parked in the victim's parking lot. Accord, *Quintana*, 332 Ill. App. 3d at 108 (where the victim was pulled off the street into a van, in finding the fourth *Levy-Lombardi* factor satisfied the court found that "[w]hile the van was in motion [the victim's] cries and screams could not be heard"); *People v. Lloyd*, 277 Ill. App. 3d 154, 164-65 (1995) ("a significant and independent danger arises where a victim is forced out of a public area and into an abandoned apartment because as a result of the asportation, a victim's

- 26 -

signal for help is more difficult to detect and the likelihood of a victim being seen by a passerby is greatly decreased"). The *Quintana* court rejected the defendant's argument that "the asportation and detention were necessary to sexually assault the victim." *Quintana*, 332 Ill. App. 3d at 107. But the court merely stated, without citing any authority, that "in order for the asportation or detention to be inherent in a separate offense, it must constitute an element of that offense." *Quintana*, 332 Ill. App. 3d. at 108. See also *Lloyd*, 277 Ill. App. 3d at 164 (holding "the forced movement of a victim from one location to another place is not inherent in the offense of criminal sexual assault" citing only to the statute defining that offense). But see *Pugh*, 162 Ill. App. 3d at 1034; *Lamkey*, 240 Ill. App. 3d at 440.

¶ 45    In *People v. Banks*, 344 Ill. App. 3d 590 (2003), at approximately 7:55 p.m. the defendant approached the victim—a 12-year-old boy—in a residential alley and asked the victim if he wanted to make some money cleaning out a garage down the alley. *Banks*, 344 Ill. App. 3d at 592. As the victim and the defendant started walking down the alley "the defendant grabbed the victim's arm and started dragging him toward a gangway." *Id*. The defendant dragged the victim approximately 10 feet. *Id*. A family friend to the victim saw what was transpiring and intervened. *Id*. The defendant ran away. *Id*. The court held that the defendant "acted with the intent to secretly confine the victim but was prevented from doing so." *Id*. at 594. The court also found that "the asportation of the victim was established beyond a reasonable doubt." *Id*. The *Banks* court focused on the rule that "a kidnapping conviction is not *precluded* by the brevity of the asportation or the limited distance of the movement." (Emphasis added.) *Id*. at 594-95, citing *People v. Casiano*, 212 Ill. App. 3d 680, 687 (1991). The court found the evidence in *Banks* established that "the defendant held the victim against his will and that asportation occurred" even if only "ten feet down the alley." *Id*. at 596. Significantly, however,

the court then found that "the asportation was not inherent to a separate offense and the asportation created a significant danger to the victim independent of that posed by a separate offense." *Id.* In other words, in *Banks*, the defendant committed no other felony that his actions, which constituted "a technical compliance with the statutory definition" of kidnapping, were incidental to; therefore, the court did not need to address that question. The court held only that "the State sufficiently proved that [the] defendant, by enticement and by force, carried the victim from one place to another." *Id.*

¶ 46    Looking to the *Levy-Lombardi* factors on their face, in this case

    (1) The duration of the asportation was brief and of a short distance. It could have taken no more than a few seconds to move the six to ten feet from the sidewalk to the tree.

    (2) The asportation occurred during the commission of the sexual assault. We reject the State's argument to the contrary. Defendant moved T.T. only a short distance from the sidewalk to commit the offense of sexual assault against her. See, *e.g.*, *Williams*, 263 Ill. Ap. 3d at 1106; *Lamkey*, 240 Ill. App. 3d at 440. There is no evidence defendant had anything else in mind or that he intended to confine T.T. any longer than necessary to complete that crime alone. *Cf.*, *Eyler*, 133 Ill. 2d at 200.

    (3) The acts constituting the kidnapping were a technical compliance with the statute but were inherent in the sexual assault. See *supra*, ¶¶ 30-33. Defendant's conduct did not go "beyond that required for the commission of the sexual assault crime." *Williams*, 263 Ill. App. 3d at 1107. See also *People v. Young*, 115 Ill. App. 3d 455, 470 (1983) ("The duration of the detention was only for the period of time necessary to accomplish the rape and, in fact, marked the beginning of the struggle culminating in the rape. It is also clear that the act relied upon was inherent in the rape itself,

since at some point in time complainant had to be restrained in some manner in order to accomplish the rape.").

(4) The asportation did not create a significant danger to T.T. independent of that posed by the sexual assault. The area behind the tree six feet from the sidewalk was not significantly "more secluded and private" and did not involve a significantly "heightened" danger that no one would see or hear what was transpiring than would be present had defendant not moved T.T. behind the tree. *Cf.*, *People v. Sumler*, 2015 IL App (1st) 123381, ¶ 60 ("[The] [d]efendant forcibly taking control of the victim's vehicle and driving her around as he did created a potential risk to the victim that was *substantially increased above the risk present* in the initial domestic battery itself." (Emphasis added.)). We do not agree with the State that the risk of harm to T.T. increased as a result of the asportation because defendant was choking her as he did so. Rather, like the movement itself, the violence inflicted upon T.T. was incidental to the sexual assault.

¶ 47 More importantly, we find the gist of the crime committed here was sexual assault, and it remained a sexual assault throughout its duration. In this case, defendant's actions in forcing T.T. to the tree were "not essentially different in relation to the [sexual assault]" than would be forcing her into a bedroom had the attack happened in a residence. See *Smith*, 91 Ill. App. 3d at 527, quoting *People v. Levy*, 15 N.Y.2d 159, 165 (1965). The danger to T.T. was not significantly increased by the movement of six to ten feet and she was not significantly dispossessed of legal and societal protection a short distance from the sidewalk in a public park than she would have been without the asportation. We find this case presents a clear example of conduct that constitutes "only a technical compliance with the statutory definition [of

kidnapping] but is, in reality, incidental to another offense." *Id*. at 220. Accordingly, defendant's kidnapping conviction cannot be sustained.

¶ 48    Defendant's conviction for aggravated kidnapping is reversed, defendant's sentence of six years' imprisonment for aggravated kidnapping is vacated, and defendant's conviction for aggravated criminal sexual assault under Count IX is reversed. In all other respects, the judgment of the circuit court of Cook County is affirmed.

¶ 49                          CONCLUSION

¶ 50    For the foregoing reasons, the circuit court of Cook County is affirmed in part and reversed in part.

¶ 51    Affirmed in part, vacated in part, and reversed in part.